Cheryl WHITMAN, Appellant (Respondent and Cross-Petitioner Below),

v.

Don Edward WHITMAN, Appellee (Petitioner Below).

No. 2–378A95.

Court of Appeals of Indiana, Second District.

June 17, 1980.

Raymond I. Klagiss and Charles E. Johnson, Heeter, Johnson, Salb & Jones, Indianapolis, for appellant.

Michael A. Kiefer and J. Gregory Garrison, Graber & Sandifer, P. C., Indianapolis, for appellee.

SHIELDS, Judge.

Wife appeals the trial court's judgment modifying custody of the parties' minor children and determining Husband's delinquent support obligation.

Reversed in part; affirmed in part.

Under terms of the 1974 decree dissolving the parties marriage, Wife was granted custody of their two children and Husband was ordered to pay $15 per week for each child as support. In August, 1977 Husband filed a petition to modify the custody order alleging a substantial change of conditions. Wife then petitioned to cite Husband for contempt for unpaid support of more than $1,000.[1] After a consolidated hearing on the petitions, the trial court found Husband delinquent under the support order, although not in contempt. Specifically considering expenditures made by Husband, the trial court ordered Husband's delinquency satisfied by the transfer of $450 to Wife.[2] The trial court also found a substantial change of conditions warranted transfer of the custody of the children to Husband.

Wife contends the trial court abused its discretion and acted contrary to law by

(1) modifying the original custody order,

(2) computing Husband's support delinquency to allow for his expenditures for the children; and

(3) failing to find Husband in contempt for not paying the required support;

### Modification of Custody

IC 31–1–11.5–22(d) [Burns Code Ed., Supp.1979] permits the trial court to modify custody provisions only upon "a showing of

---

1. Wife also sought modification of the decree to increase Husband's support obligation. She does not however appeal the trial court's denial of this petition.

2. The trial court's judgment "specifically [took] into consideration various expenditures made by [Husband] . . . with respect to this finding as to the arrearage . . . ."

changed circumstances so substantial and continuing as to make the existing custody order unreasonable." The trial court's determination that conditions justify modification rests in its sound discretion, and to challenge this determination Wife must demonstrate the trial court abused its discretion. *Campbell v. Campbell*, (1979) Ind. App., 396 N.E.2d 142, 143.

■ Although the evidence is conflicting, that favorable to the trial court's decision supports a finding of a substantial change of circumstances.[3] During the three years the children were in Wife's custody they had moved seven times. There was evidence indicating that for a period in 1976 the children's living quarters were cramped and unsanitary. When the children visited with Husband and his new wife in summer, 1976, the children were initially so unruly that one babysitter threatened to quit. However, their behavior improved over the summer and the children were described as healthier looking after their visit with Husband. Husband's ability to care for the children had substantially improved since the decree,—he had bought a home with room to accommodate the children and was married to a woman who cared for the children and for whom the children had affection. In the latter part of 1976, Wife and the children moved to Georgia with Husband's consent, but for several months Husband was unable to locate them.

However, IC 31–1–11.5–22(d) requires that prior to modifying a custody order the trial court determine not only that changed conditions be substantial *but that they be continuous.* The evidence presented at trial relates to conditions dating one to one-and-one-half years prior to the hearing. There was no evidence that the conditions continued even months before the modification determination. Indeed, uncontroverted evidence presented by Wife indicates the children most recently were not unruly nor dirty and were doing well in school.[4] At the time of the hearing Wife was providing as much living space for the children as Husband, each child having a separate bedroom.

■ When reviewing the trial court's discretionary determination, this Court examines the evidence to determine if there is any evidence supporting the trial court's determination; and it is only when the trial court's determination is "against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be draw therefrom" that we will reverse. *Marshall v. Reeves*, (1974) 262 Ind. 107, at 115, 311 N.E.2d 807, at 812. The overlying concern in any custody determination is the best interest of the child. *Franklin v. Franklin*, (1976) Ind.App., 349 N.E.2d 210. When initially determining the custodian of a child in a dissolution, IC 31–1–11.5–21(a) [Burns Code Ed., Supp.1979] requires the court make its determination "in accordance with the best interests of the child." At that point, there is no presumption favoring either parent, the statute requiring certain factors to be considered by the trial court, all focusing on the child's welfare.[5] Once

---

**3.** We do not discuss testimony concerning the children's sloppy appearance and poor personal hygiene because the evidence indicates this condition existed in 1973 *prior to the original custody order* and would therefore be irrelevant to establishing a change in conditions after the custody order.

**4.** The children's school principal described the children as healthy, bright, academically above average, and orderly children who never needed disciplining. He stated the children were leaders with initiative who participated in student activities and who had good attendance records. He testified he had never seen them unkempt or unbathed, but rather clean and wearing clean and well-fitted clothing.

**5.** The court shall determine the custody and enter a custody order in accordance with the best interests of the child. In determining the best interests of the child, there shall be no presumption favoring either parent. The court shall consider all relevant factors including:

(1) the age and sex of the child;

(2) the wishes of the child's parent or parents;

(3) the wishes of the child;

(4) the interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interests;

(5) the child's adjustment to his home, school, and community; and

the initial determination has been made pursuant to these guidelines, a petition seeking modification must establish a substantial and continuing change in the original conditions necessitating the modification. IC 31–1–11.5–22(d). Such strict showing promotes the stability of the child, therefore ensuring the child's best interests will be paramount.

Because there is no evidence to support a finding that any changes *continued* to affect the children so as to make its original order unreasonable,[6] we find the trial court abused its discretion in modifying its earlier custody order.

### Computation of Delinquency

Specifically considering expenditures made by Husband, the trial court ordered Husband to transfer $450 to Wife in satisfaction of his delinquency. At the hearing Husband had affirmatively defended a delinquency of approximately $1350 by requesting the court reduce that amount by expenditures for clothing, toys, food, and entertainment which he directly furnished the children. He additionally requested credit for actual support furnished by him May through August, 1976 while the children were in his custody.

Wife contends the trial court's allowance for Husband's payments not conforming to the support order effected a retroactive modification of the order and was therefore contrary to law. Husband responds the trial court was merely acknowledging compliance with the purpose of the support order—to care and provide for the children.

■■■ As Husband indicates, an order for child support, established as part of a dissolution action, is intended to provide for the support and maintenance of the parties'

minor children. IC 31–1–11.5–12 [Burns Code Ed., Supp.1979]; *In re Marriage of Honkomp,* (1978) Ind.App., 381 N.E.2d 881, 882. In accordance with this duty the trial court frames its order establishing the obligated parent's legal responsibility to support the children, retaining continuing jurisdiction to modify that responsibility when conditions require. *Brokaw v. Brokaw,* (1980) Ind.App., 398 N.E.2d 1385; *See* IC 31–1–11.5–17 [Burns Code Ed., Supp. 1979].[7] All modifications to a support order, however, must operate prospectively. *Jahn v. Jahn,* (1979) Ind.App., 385 N.E.2d 488. Until the terms of the support order are modified, the obligated parent must make the payments in the manner, amount, and at the times required by the original order. *Stitle v. Stitle,* (1964) 245 Ind. 168, 197 N.E.2d 174. This court has therefore refused to credit individual debts of the custodial parent paid by the obligated parent but not provided for in the support order against the obligated parent's support obligation, *In re Honkomp, supra*; and has treated excess payments made by an obligated parent pursuant to an extrajudicial agreement with the custodial parent as voluntary contributions. *Haycraft v. Haycraft,* (1978) Ind.App., 375 N.E.2d 252. By promoting stability in enforcement of the orders, these restrictions on modification of support orders ensure the best interest of the child will remain the paramount concern in a support determination. *Cf. Franklin v. Franklin,* (1976) Ind.App., 349 N.E.2d 210 (The guiding principle of the Dissolution of Marriage Act, IC 31–1–11.5, is the best interest of the child).

Arguing his expenditures provided direct support for the children and thus complied with the purpose of the support order, Husband attempts to distinguish his situation

---

(6) the mental and physical health of all individuals involved. [IC 31–1–11.5–21(a).]

6. The trial court in its judgment failed to specifically find the changes to be continuing, merely finding a "vital and substantial change of condition which justifies a change in custody of the two minor children . . . from the custody of their mother . . . to the custody of their father . . . ."

7. "Provisions of an order with respect to child support may be modified or revoked. Such modification shall be made only upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable." IC 31–1–11.5–17(a) [Burns Code Ed., Supp.1979].

from those present in *Honkomp* and *Haycraft*. He argues he cared for and supported his children during the summer of 1976 and also provided them with the type of support which he thought Wife failed to adequately provide with the support payments she received—clothing, toys, food, and entertainment.[8] He concludes because the children are the beneficiaries of the support order, the trial court properly credited him for support furnished in compliance with that order.

Indiana appellate decisions assume divergent approaches to this issue. In *Franklin v. Franklin*, (1976) Ind.App., 349 N.E.2d 210, this court held that because "[t]he purpose of the support payments is to provide for the support and maintenance of the minor child." the trial court did not abuse its discretion by crediting husband's delinquency for the period the child was in his custody and husband was in fact supporting him. However, in *Jahn v. Jahn*, (1979) Ind.App., 385 N.E.2d 488, this court held case law requiring all modifications of a support order be prospective prevented the trial court from crediting husband for the period he had custody of the children.

Courts of other jurisdictions also reach conflicting results. Appellate decisions allowing the trial court discretion to credit the obligated parent for nonconforming payments have emphasized the equitable nature of the proceedings. Although an obligated parent is generally required to abide by the specific terms of the support order, "compulsion of circumstances" may allow him credit for nonconforming payments. The Alabama Supreme Court found circumstances sufficient to allow credit in *Headley v. Headley*, (1964) 277 Ala. 464, 172 So.2d 29. Carefully examining the facts presented—wife requested husband to assume custody because she was ill, which husband did for 17 months—the Alabama Supreme Court held husband was entitled

to a credit for support furnished during that time. In *Steckler v. Steckler*, (1956) Mo.App., 293 S.W.2d 129, the Missouri Supreme Court held when compulsion of circumstances requires the obligated parent to make direct expenditures, equitable considerations *may* require credit for these expenditures to the extent they "constitute a substantial compliance with the spirit and intent of the decree." 293 S.W.2d at 134. The circumstances under which credit is permitted would require not only that conditions demand the expenditures but that the custodial parent either expressly or impliedly consent to this alternative method of payment. *Id.* , Noting that the custodial parent cannot contract away the children's right to support, a parent-trustee is nevertheless entrusted with the duty and right to say how the funds shall be spent. Therefore a parent-trustee can designate or consent to an alternative method of payment which "being made by her direction or consent, would amount to a payment to her . . . ." *Id.*, at 135. Applying this reasoning, in *M v. M*, (1958) Mo.App., 313 S.W.2d 209, the Missouri Court of Appeals affirmed the allowance of credit by the trial court for support payments to the children's grandparents when the children were in their custody. By consenting to the custody change, the custodial parent had implicitly consented to the alternate method of payment. Further, because husband's payments to the grandparents furnished the support intended by the provisions of the court's support order, the Missouri Court of Appeals found husband had substantially complied with the spirit and intent of the order. Because the children were the intended beneficiaries of a support order, to require husband to pay again to wife would amount to unjust enrichment. 313 S.W.2d at 214. *See also Webb v. Webb*, (1971) Mo.App., 475 S.W.2d 134 (husband not entitled to credit for prior overpayments when

---

8. Husband testified upon direct examination:
 "Q. Mr. Whitman, do you . . . you have, I believe, observed what your wife has done with the support money that you have paid for the benefit of your children?

A. I think it would be a more accurate representation to say that I have observed what has not been done . . . I have not seen any new clothes to speak of or . . . ah . . . anything in the way of other activities for the children . . . ah. . . . . "

wife did not agree to accept as payment of future obligation). *See generally*, Annot., 47 ALR 3d 1031 (1973).

Jurisdictions holding an obligated parent is never entitled to credit payments not specifically conforming to the terms of the support order have reasoned to allow credit for nonconforming payments would empower the parent to unilaterally vary the terms of the court order to the probable harm of the children. This was the rationale adopted by the Georgia Supreme Court in *Wills v. Glunts*, (1966) 222 Ga. 647, 151 S.E.2d 760, in which it held the trial court erroneously credited husband for overpayments made to wife while the children were in his custody. The Georgia Supreme Court also explained:

> "[d]ecrees for child support should be strictly complied with and credit should not be allowed for overpayments voluntarily made. . . . [S]uch overpayments are gratuities for which the children should not be required to account."

151 S.E.2d at 762. Courts have also reasoned that credit for nonconforming payments would allow the obligated parent to usurp the right of the custodial parent under the support order to determine the manner in which support payments should be spent. *See Cotton v. Wright*, (1939) 193 La. 520, 190 So. 665. Other jurisdictions have disallowed these credits as a matter of law as effecting an impermissible retroactive modification of the support order. Noting that it may not always be equitable to require an obligated parent to pay support to the custodial parent while the children are in the former's custody, the Washington Supreme Court in *Bradley v. Fowler*, (1948) 30 Wash.2d 609, 192 P.2d 969, held notwithstanding the equitable nature of support proceedings, "even a court of equity, in an effort to do equity, cannot disregard the provisions of a lawful decree . . . ." 192 P.2d at 975. To allow an obligated parent to justify his support delinquency by expenses incurred would cause " . . . continuous trouble and turmoil. If a party to such a decree is not satisfied with its provisions relative to the custody of the children, or payments required to be made for their support, such party may always come into court and ask for a modification of the decree." *Id.*, at 975. *See also Klimasewski v. Klimasewski*, (1960) 91 R.I. 308, 162 A.2d 549; *Jarvis v. Jarvis*, (1976) 27 Ariz.App. 266, 553 P.2d 1251.

■ As this case is presented to us, we presently believe the rule disallowing credit for nonconforming payments is more beneficial to all parties. One purpose of a rule of law is to provide, with a reasonable degree of certainty, a rule to which an individual can conform his conduct. Those jurisdictions allowing the trial court discretion to give credit for nonconforming payments in that they emphasize the equitable nature of the relief, have found it impossible to develop any guidelines for the exercise of the judicial discretion. As a result, each case is subject to decision on its particular and special facts. While we do not condemn nor look askance at equity, nevertheless in this particular area we feel predictability and certainty has superior merit. The obligated parent knows payment as ordered is required and any deviation can result in court censure. The parent receiving the support can reasonably plan and depend on the ordered support in fulfilling the awesome responsibility of providing day-to-day care and support for the child in his or her custody. Both parties know that if circumstances change, or any question arises concerning the use of the support funds, or the necessity of the payment that the available remedy is through judicial review—as soon as possible. That is far better than for the obligated parent to take the matter in his or her own hands only to have it determined after some considerable lapse of time that a considerable arrearage has accumulated.

Then, too, the paramount concern in any approach taken by an appellate court must be the best interest of the children. By entrusting Wife with the obligation of determining how the support money is spent, the trial court also allowed her the *right* to determine how that money is spent. Receiving the money as trustee for children,

she must, however, use the funds for their intended purpose—the support and maintenance of the parties' children. If she fails to fulfill her custodial duties, IC 31–1–11.5, sections 17(a) and 22(d), provide Husband with means of seeking modification of both support and custodial provisions. These determinations, as noted earlier, are to be made by the court after scrutinizing all circumstances in light of applicable rules of law designed to protect the best interests of the child. These rules of law require an obligated parent pay in accordance with the terms of the order until those provisions are prospectively modified by the court. *Stitle v. Stitle*, (1964) 245 Ind. 168, 197 N.E.2d 174; *Corbridge v. Corbridge*, (1951) 230 Ind. 201, 102 N.E.2d 764.

The support order at issue did not provide for the alternate method of payment which the trial court allowed. If Husband wanted alternate provisions he could and should have petitioned the trial court to modify the support order. The trial court therefore acted contrary to law by computing Husband's delinquency to allow credit for expenditures which did not comply with the terms of the decree.

*Contempt Determination*

Wife contends the trial court abused its discretion by not finding Husband in contempt for failure to pay the requisite support.

 IC 34–4–7–3 [Burns Code Ed., 1973] provides "[e]very person who shall be guilty of any willful disobedience of any . . . order lawfully issued by any court . . . shall be guilty on an indirect contempt of the court . . . ." At the initial hearing Husband had the burden of establishing that his failure to obey the order was not willful. *See Slagle v. Slagle*, (1973) 155 Ind.App. 304, 292 N.E.2d 624. The presence of the requisite intent was a factual determination for the trial court and will be set aside on appeal only if Wife establishes there is no evidence supporting its determination.

 The evidence supporting the trial court's determination indicates that, although not complying with the specific terms of the order, Husband did care for and support the children while they were in his custody during the summer of 1976. Furthermore, while the children were out of state with his consent he placed money in a savings account for each child. Therefore, although the evidence is conflicting, the trial court could reasonably conclude that Husband's failure to comply with the order was not willful disobedience of its terms.

The trial court's judgment insofar as it modifies custody and allows Husband credit for nonconforming support payments is reversed and the cause is remanded for further proceedings consistent with this opinion. It is otherwise affirmed.

BUCHANAN, C. J., concurs.

SULLIVAN, J., concurring opinion.

SULLIVAN, Judge, concurring:

I concur in the majority's decision concerning the modification of custody and the trial court's contempt determination. I also concur in the majority's holding that the trial court erred in giving credit to the husband for payments which did not conform to the support order.

In the case before us, the husband specifically testified that the credited support payments were premised, at least in part, upon a subjective disagreement concerning the needs of the children. The husband chose to provide arguably unessential items, e.g., toys and entertainment. Furthermore, husband does not defend the credit given him by the trial court except as it relates to the contempt determination. For these reasons, I concur in the result reached.

That the majority decided this issue upon the facts before us is indicated by the following:

> "*As this case is presented to us, we presently* believe the rule disallowing credit for nonconforming payments is more beneficial to all parties." (Emphasis supplied.)

Our decision here does not preclude, for all time and in all possible circumstances, the

application of equitable considerations to give credit for support paid in a form, manner, or at times insignificantly different from that ordered with great specificity.