**Marjorie A. REFFEITT, Appellant (Plaintiff Below),**

v.

**James A. REFFEITT, Appellee (Defendant Below).**

No. 3–680A167.

Court of Appeals of Indiana, Third District.

April 30, 1981.

Rehearing Denied July 23, 1981.
See 423 N.E.2d 673.

Robert D. Colestock, Fort Wayne, for appellant.

Bruce O. Boxberger, Grotrian & Boxberger, Fort Wayne, for appellee.

HOFFMAN, Presiding Judge.

Marjorie A. Reffeitt appeals the trial court's determinations concerning the

amount of support arrearage and modification of a support order. The issues raised by Marjorie have been consolidated and restated as follows:

(1) whether the trial court erred in its determination of support arrearage; and

(2) Did the trial court commit reversible error in failing to include the income of a Subchapter S corporation as part of the personal income of James Reffeitt when considering Marjorie's petition for a modification of the support order?

James and Marjorie Reffeitt were divorced on March 25, 1974. Marjorie was granted custody of the couple's four minor children. James was ordered to pay $650 per month for the maintenance and support of the children. The oldest daughter married and left Marjorie's residence in September of 1975. Shortly thereafter James reduced his support payments by one-fourth. A second daughter left Marjorie's residence in June of 1977. James again reduced the amount of his support payments by one-fourth. There had never been a court order modifying James' support obligation.

Marjorie filed a verified information in contempt and for an increase in support on September 14, 1978. In the information Marjorie stated that James had failed to pay support as ordered by the court. Marjorie also alleged substantial changes in circumstances which required a modification of the original support order. Included among the changed circumstances was the emancipation of the two daughters.

James filed a motion for summary judgment. Essentially, James contended that a contempt proceeding was an improper procedure for the purpose of collecting support for emancipated children although it had accrued prior to the emancipation. The referee recommended that the motion for summary judgment be granted. There is however no indication in the record that the motion was actually granted by the trial court. Marjorie thereafter filed a petition to establish arrearages and determine payment for the support that had accrued before the daughters became emancipated.

A hearing was held before a referee. The referee made findings of fact and recommendations which were accepted by the trial court. The findings were later amended as a result of Marjorie's motion to correct errors.

The final findings and recommendations, as accepted by the court included: 1) a finding that Marjorie and James had reached an informal agreement by which James would reduce the amount of his support payments as each child became emancipated; 2) a finding that James had failed to pay support for the benefit of the two unemancipated children for a period of two months and was in arrears in the sum of $650; 3) a finding that James' net income was $260 per week; and 4) a recommendation that the original support order be modified to $325 per month.

Marjorie contends that the trial court erred in computing the amount of arrearage. The initial information filed by Marjorie alleged that James had failed to pay support as ordered by the court for several months. This information apparently included support for the emancipated daughters before their emancipation along with support for the unemancipated children. The evidence is uncontroverted that James unilaterally reduced his payment by one-fourth as each girl became emancipated. Also uncontroverted is James' failure to pay any support for a period of two months.

█ James was not entitled to unilaterally reduce support payments. It was held in *Ross v. Ross* (1979) Ind.App., 397 N.E.2d 1066 that when a divorce decree contains an undivided support order, "the obligated parent should not be allowed to arbitrarily reduce the support payment, but should petition to the trial court for an examination of current conditions to determine if modification of the order is proper." (Citations and footnote omitted.) *Id.* at 1070. This procedure should be utilized despite the fact that a child becomes emancipated. In the present case, James did not petition the court for a modification of the support or-

der. He was therefore obligated to pay the full amount of $650 per month until such time as the order was modified or all of the children became emancipated.

James argues that the only issue before the trial court was whether he was in arrears for the support of the emancipated children which had accrued prior to their emancipation. In making this argument, James assumes that the trial court granted his motion for summary judgment on Marjorie's original information for contempt. This assumption is erroneous. As noted previously, although the referee recommended that the motion be granted, there is no indication in the record that the trial court acted upon the recommendation. The original information for contempt was therefore still before the court.

It should be noted that James was not the only one acting under the assumption that the motion for summary judgment had been granted. It is apparent from the comments of the referee and attorneys at the hearing that everyone believed that the motion for summary judgment had been granted in regard to the portion pertaining to the emancipated children.

"MR. HOCKENSMITH [Referee]:

On August the 13th the court sustained Defendant's motion for summary judgment with regard to the two older children, Cynthia and Debra, with regard to the aspect of contempt and support increase, and denied the motion to dismiss leaving open matters of contempt and modification for the two younger children which is the subject of the contempt citation begun on May the 14th. Now, if that summary of the record is correct, we are here this afternoon to allow the defendant to complete presentation of evidence on the contempt that was begun on May 14th as well as to hear some argument if it wish to be presented on the Defendant's motion to strike.

"MR. BUSICK [Appellant's Attorney]:

Judge, subsequent to the granting of the motion for summary judgment, plaintiff did file a pleading requesting that the Court establish the amount of arrearage of support for the two older children, also. If I recall correctly, we've got sort of a three-pronged approach here at this point. One is contempt remaining on the two younger children, one is increase in support on the two younger children, and the the third is establishment of arrearage of the delinquent support on the two emancipated older children so that we would have some figure to—upon which to base supplemental proceedings in that respect based under the *Kuhn* case.

"MR. HOCKENSMITH: Mr. Boxberger.

"MR. BOXBERGER [Appellee's Attorney]:

Your Honor, I agree with Mr. Busick that subsequent to the granting of the motion for summary judgment a petition to establish arrearage had been filed by the Petitioner or Plaintiff in this cause."

From the above exchange between the referee and attorneys, it is also apparent that the referee considered the issue of contempt upon the support payments due the unemancipated children as an issue still before the court. James' argument that the amount of arrearage for the unemancipated children was not in issue must fail.

James attempts to distinguish *Ross, supra,* on the basis of the amount of support being paid. James contends that the unilateral reduction in support payments in *Ross* seriously affected the care and support of the remaining unemancipated child. James urges that the situation in the instant case is significantly different in that he is at the present time contributing sufficient funds to adequately provide for the care and support of the children residing with Marjorie.

A careful reading of *Ross* fails to indicate that its holding was in any way based upon the amount of support being paid or the effect that a reduction in payment might have on the care and support of the children. The Court unequivocally stated:

"Emancipation of some of the children did not, however, relieve Husband of his

duty to support the remaining minor children. The original order required Husband to pay $42.50 per week as 'support for said minor children . . . until further order of Court.' Therefore, Husband was required to support the remaining minor children under the tenor of the original order ($42.50 per week) until his duty to support *all* the minor children terminated as a matter of law." (Original emphasis.) (Footnote omitted.)

397 N.E.2d at 1069.

James was therefore obligated to pay $650 per month until his duty was terminated as a matter of law when all the children were emancipated, or until the support order was modified by the court.

The trial court found that there existed an agreement between James and Marjorie that James would be entitled to reduce the amount of support by one-fourth as each child became emancipated. The trial court also found that due to Marjorie's failure to timely complain to the reduction in support that she was equitably estopped from denying that the agreement existed.

■ It must first be recognized that Marjorie's information for contempt was not untimely filed. The information was filed three years after the first reduction and fourteen months after the second reduction. The applicable statute of limitations for child support cases is fifteen years from the date each installment becomes due and is unpaid. *Kuhn v. Kuhn* (1980) Ind., 402 N.E.2d 989. Marjorie's information is clearly within the statutory period.

■ Even if it could be said that Marjorie should be estopped from denying the existence of an agreement, such an agreement is unenforceable. It has been held that "the parent having custody in such a proceeding as this is merely a trustee of the support payments and, therefore, would have no right to contract away the benefits of the trust." *Grace v. Quigg* (1971), 150 Ind.App. 371, at 379, 276 N.E.2d 594, at 599. Until the original support order was modified by the court, James was legally obligated to comply with the terms of that order regardless of any contrary agreement entered into with Marjorie. *See, Haycraft v. Haycraft* (1978), Ind.App., 375 N.E.2d 252. There being no court ordered modification of the support order, the trial court erroneously computed the amount of arrearages due the unemancipated children.

■ Finally, Marjorie contends that it was error for the trial court not to include the income of Grueninger Travel Service of Fort Wayne, Inc. in determining the personal income of James. Grueninger Travel Service is a Subchapter S corporation with James as the sole shareholder. It appears that in making this argument Marjorie is essentially challenging the trial court's determination on her request for support modification.

Initially it must be noted that special findings were neither requested, nor required. Accordingly, a special finding upon less than all of the issues "shall be recognized as findings only upon the issues or matters covered thereby and the judgment or general finding, if any, shall control as to the other issues or matters which are not covered by such findings." Ind. Rules of Procedure, Trial Rule 52(D). *See also, Kizer v. Davis* (1977), Ind.App., 369 N.E.2d 439.

The trial court specifically found that James' *net income* was $260 per week. One of the factors to be considered when a court orders support payments is the financial resources of the non-custodial parent. IC 1971, 31–1–11.5–12 (Burns 1980 Repl.).[1] "Financial resources" is a much broader term than "net income" and may include earning capacity, ownership of capital assets together with other possessory inter-

---

1. IC 1971, 31–1–11.5–12 (Burns 1980 Repl.) provides:

"Child support.—(a) In an action pursuant to section 3(a) or (b) [31–1–11.5–3(a) or (b)], the court may order either parent or both parents to pay any amount reasonable for support of a child, without regard to marital misconduct after considering all relevant factors including:

(1) The financial resources of the custodial parent;

(2) Standard of living the child would have enjoyed had the marriage not been dissolved;

(3) Physical or mental condition of the child and his educational needs; and

ests. The income of Grueninger Travel Service need not be considered as the personal income of James as long as his ownership interest in the corporation was considered a financial resource. Because the trial court did not make a special finding as to James' financial resources, the record must be examined to determine if the judgment is supported by sufficient evidence. Since the provisions of TR. 52(D) mandate that the judgment controls where special findings are not required, the judgment must be affirmed if it is sustainable on any theory of law applicable to the evidence. *Cressy v. Shannon Continental Corp.* (1978), Ind.App., 378 N.E.2d 941.

The record indicates that Marjorie's entire case-in-chief centered on the arrearage and was not concerned with the modification issue. During James' case-in-chief, there was evidence of his personal net income and the stockholder's equity in Grueninger Travel Service. There was also evidence that James' personal income had changed very little, if at all, since the time of the original divorce decree. There was no evidence of past earnings of Grueninger Travel Service. There was also no in-depth evidence as to the amount of money needed to support the unemancipated children.[2] The only evidence whatsoever in this regard was that at the time of the divorce $650 per month was reasonable support for four children.

Marjorie filed the petition for modification of the support order. As the petitioner, Marjorie had the burden of showing

"changed circumstances so substantial and continuing as to make the terms [of the original order] unreasonable." IC 1971, 31–1–11.5–17 (Burns 1980 Repl.). The only change in circumstances shown was the emancipation of two children. Based on the evidence the trial court committed no error in ordering James to pay $325 per month for the maintenance and support of the two unemancipated children.

For the above reasons the judgment of the trial court is affirmed in part, reversed in part and remanded for proceedings consistent with this opinion.

GARRARD and STATON, JJ., concur.

---

(4) Financial resources and needs of the non-custodial parent.
(b) Such child support order may also include, where appropriate:
(1) Sums for the child's education in schools and at institutions of higher learning, taking into account the child's aptitude and ability and the ability of the parent or parents to meet these expenses; and
(2) Special medical, hospital or dental expenses necessary to serve the best interests of the child.
(c) As part of such child support order the court may set apart such portion of the property of either parent or both parents, as may seem necessary and proper for the support of the child.

(d) The duty to support a child under this chapter ceases when the child reaches his twenty-first birthday unless:
(1) The child is emancipated prior to his twenty-first birthday in which case the child support, except for educational needs, terminates at the time of emancipation; however, an order for educational needs may continue in effect until further order of the court; or
(2) The child is incapacitated in which case the child support continues during the incapacity or until further order of the court."

2. Marjorie's financial resources and the amounts she expended for the maintenance of the children were addressed in her answers to James' interrogatories. These answers however were not introduced into evidence at the hearing.