**Diann A. ISLER, Plaintiff-Appellant,**

**v.**

**Thomas J. ISLER, Defendant-Appellee.**

**No. 1–1280A371.**

Court of Appeals of Indiana,
First District.

June 30, 1981.

Rehearing Denied Sept. 15, 1981.
See 425 N.E.2d 667.

Robert A. Kelso, New Albany, for plaintiff-appellant.

Virgil E. Bolly, Sellersburg, for defendant-appellee.

NEAL, Presiding Judge.

## STATEMENT OF THE CASE

This is an appeal by petitioner-appellant Diann A. Isler (Diann) from a judgment of the Clark Superior Court on her petition for a rule to show cause for nonpayment of support by her former husband, Thomas J. Isler (Thomas), and his counter-petition to modify the decree of divorce.

We reverse in part and affirm in part.

## STATEMENT OF THE FACTS

The parties were divorced on May 12, 1972, and by the terms of the decree Diann was awarded the custody of the three children of the parties: Kent, age 11, Kreig, age 10, and Karen, age 3. Thomas was ordered to pay $60 per week for their support. The support was ordered in gross, and not separated or a particular amount assigned for each child. The present litigation grew out of Diann's petition for a rule for Thomas to show cause why he should not be punished for contempt for failure to make the support payments. Her petition also contained a prayer for attorney fees.

In his answer, Thomas conceded an arrearage of $5,150. He counter-petitioned to modify the decree to terminate Kent's support on the ground that Kent was emancipated, and to terminate Kreig's support on July 1, 1980, as Kreig would then be 18 and emancipated.

After a hearing on the petitions, the trial court entered an order (1) modifying the decree by declaring Kent emancipated and terminating support for him, (2) ordering Thomas to pay $20 per week per child for Kreig and Karen, and (3) determining the support arrearage to be $1,200. The trial court did not make any findings or enter any orders upon the issues of (1) attorney fees, (2) contempt for nonpayment of support, or (3) the enforcement of the payment of arrearages. From that judgment Diann appeals.

## ISSUES

Diann raises four issues for our consideration:

I.  Whether the decision of the trial court establishing Thomas's arrearages at $1,200 is erroneous and contrary to law;

II. Whether the decision of the trial court declaring Kent emancipated is contrary to the evidence and/or is not sustained by the evidence;

III. Whether it was erroneous for the trial court to fail to rule on the issue of Thomas's contempt, and whether the trial court abused its

discretion by not finding him guilty of contempt; and

IV. Whether it was erroneous for the trial court to fail to rule on the issue of Diann's request for attorney fees, and whether the trial court abused its discretion in not awarding her attorney fees.

## DISCUSSION AND DECISION

*Issue I. Arrearages*

The evidence, which is largely undisputed, most favorable to the court's decision on this issue, discloses the following: Kent, age 19 at the date of the hearing, left Diann's home in February of 1973, and from that time until January of 1977 lived with and was supported by Thomas. In January he moved from his father's home into a dwelling with a friend, but after two months moved back with Diann where he remained until the date of the hearing, March 28, 1980. Kreig, age 18 at the time of the hearing, left Diann's home in February of 1974 and lived with and was supported by Thomas until June of 1979, when he returned to Diann's home. Karen, age 11 at the time of the hearing, remained with Diann from the time of the divorce until the present.

Thomas filed an answer to the petition wherein he alleged that $12,480 in support had accrued, and claimed credits for payments to the clerk of court in the amount of $1,480 and to Diann directly in the amount of $5,850, for a total of $7,330. At the trial he testified these figures were correct. By calculation it is seen that he conceded arrearages of $5,150. His answer simply requested the court rule in accordance with that information. Ordinarily, the answer would be dispositive of the proposition that at least a $5,150 arrearage existed. However, we have examined the other evidence in the record to attempt to determine if any evidence or inferences existed from which the court could arrive at the determination that Thomas was only $1,200 in arrears.

Assuming, *arguendo*, (1) the court thought the $60 per week could be broken down into $20 per child per week, (2) the court thought the $20 per child per week accrued only when a given child was in Diann's care, (3) the court credited Thomas with all the payments he claimed to have made, and (4) the court found Kent was emancipated in 1977, the following computations can be made: Kent lived with Diann 39 weeks, and at $20 per week the accrued support would be $780. Kreig lived with Diann a total of 129 weeks, and at $20 per week the sum of $2,580 support would have accrued. Karen lived with Diann 410 weeks, accruing support in the sum of $8,200. Recapitulation reveals $11,560 in support accrued. Payments claimed by any analysis of the evidence do not exceed $7,330, leaving a bare minimum arrearage of $4,230.

We are aware that when considering an appeal from a trial before the court without the intervention of a jury, a reviewing court may not disturb the judgment of the court unless it is clearly erroneous. Ind. Rules of Procedure, Trial Rule 52(A). The judgment of the trial court must be upheld if it can be sustained upon any legal theory that the evidence supports. We will not weigh the evidence or judge the credibility of the witnesses. *Hurt v. Polak*, (1979) Ind.App., 397 N.E.2d 1051. However, we have neither been directed by the briefs nor can we discern what set of calculations may exist that would justify a finding of a $1,200 arrearage. We conclude the judgment of the trial court is erroneous.

However, the faulty analysis does not stop with the arithmetic calculations. In *Whitman v. Whitman*, (1980) Ind.App., 405 N.E.2d 608, 611, Judge Shields summarized the duties of the obligated parent.

"[A]n order for child support, established as part of a dissolution action, is intended to provide for the support and maintenance of the parties' minor children. IC 31–1–11.5–12 [Burns Code Ed., Supp.1979]; *In re Marriage of Honkomp*, (1978) Ind.App., 381 N.E.2d 881, 882. In accordance with this duty the trial court

frames its order establishing the obligated parent's legal responsibility to support the children, retaining continuing jurisdiction to modify that responsibility when conditions require. *Brokaw v. Brokaw,* (1980) Ind.App., 398 N.E.2d 1385; See IC 31–1–11.5–17 [Burns Code Ed., Supp. 1979]. All modifications to a support order, however, must operate prospectively. *Jahn v. Jahn,* (1979) Ind.App., 385 N.E.2d 488. Until the terms of the support order are modified, the obligated parent must make the payments in the manner, amount, and at the times required by the original order. *Stitle v. Stitle,* (1964) 245 Ind. 168, 197 N.E.2d 174. This court has therefore refused to credit individual debts of the custodial parent paid by the obligated parent but not provided for in the support order against the obligated parent's support obligation, *In re Honkomp, supra;* and has treated excess payments made by an obligated parent pursuant to an extrajudicial agreement with the custodial parent as voluntary contributions. *Haycraft v. Haycraft,* (1978) Ind.App., 375 N.E.2d 252." (Footnote omitted.)

In *Ross v. Ross,* (1979) Ind.App., 397 N.E.2d 1066, this court held that where there was a support order in gross for multiple children, without any alternate provisions or designations of amounts per child, the emancipation of the older children did not effect any reduction of the support order so long as there was a minor child remaining dependent upon the obligated parent for support. The obligated parent was required to pay support for the remaining minor child or children under the terms of the original order until his duty to support *all* of the minor children terminated as a matter of law. The court stated that if the obligated parent had desired a pro rata reduction of the undivided support order as the children became emancipated, he should have petitioned the court to modify the original order.

In *Jahn v. Jahn,* (1979) Ind.App., 385 N.E.2d 488, the obligated parent was not permitted to set off against the support order amounts which accrued while the children were with him. A like result was reached in *Haycraft v. Haycraft,* (1978) Ind. App., 375 N.E.2d 252, in which the court held the parties had no power to modify the terms of the original support order by means of an extra-judicial agreement.

It is clear from the above-cited cases that (1) Thomas cannot claim, without a judicial modification, any reduction of the undivided support order until *all* of the children are emancipated, and (2) Thomas cannot claim credit against accrued support for the weeks Kent and Kreig lived with him.

Therefore, we hold that the trial court erred in the calculation of the accrued support arrearage. The judgment is reversed and the trial court is ordered to grant a new trial on this issue.

*Issue II. Emancipation*

■ Emancipation of a child terminates the obligation to support. *Ross, supra.* We have held in Issue I that Kent's emancipation had no effect on the accrued support or contempt, and therefore, it is relevant only to Thomas's petition to modify. In *Brokaw v. Brokaw,* (1980) Ind.App., 398 N.E.2d 1385, 1388, the court stated:

"Emancipation frees a child from the care, custody and control of its parents. *Stitle v. Stitle* (1964), 245 Ind. 168, 197 N.E.2d 174. What constitutes emancipation of a minor child is a question of law, but whether there has been an emancipation is a question of fact. *Stitle, supra.* Emancipation of a child is never presumed, but must be established by competent evidence. Such evidence may be circumstantial. It may also be demonstrated by express agreement or by the conduct and acts of the parent and child. *Allen v. Arthur* (1966), 139 Ind.App. 460, 220 N.E.2d 658."

■ The facts most favorable to the judgment on this issue are as follows: On the date of the hearing Kent was 19 years old. He had quit school as a freshman in December of 1976, and had never returned. He suffered from dyslexia and was a slow learner. He was considered bright and capable, the learning deficiency being attrib-

uted to the dyslexia. Thomas testified that Kent was running around with a tough crowd, staying out all night, and acting headstrong. Kent left home pursuant to Thomas's ultimatum to go to school or get a job. Thereupon, in 1977, Kent moved in with a friend and got a full time job. The job, for obscure reasons, lasted only two months, whereupon Kent moved back to his mother's residence. He worked three months in 1979 for a contractor. He was pursuing a G.E.D. diploma at the time of the hearing, but there was evidence that at the time of the hearing he was truant from this endeavor. He was able to work and support himself. Thomas characterized Kent as dilatory.

In 59 Am.Jur.2d. *Parent and Child* § 94 (1971), p. 194, it is stated:

"Power to emancipate resides in that parent having the duty to support, usually the father. An express emancipation takes place when the parent freely and voluntarily agrees with his child, who is able to take care and provide for himself, that he may leave home, earn his own living, and do as he pleases with his earnings. Such a contract may be written or oral. But emancipation need not be express and is often implied from conduct and circumstances." (Footnotes omitted.)

In *Surface v. Dorrell*, (1944) 115 Ind.App. 244, 57 N.E.2d 66, an 18 year old girl claimed the value of services rendered as a household servant against her decedent grandmother's estate. The estate contended she was not yet emancipated, since she had lived, before and after the period of service, with her father, and he had not expressly relinquished his right to her earnings. The trial court allowed the claim and the appellate court affirmed, stating:

"During the time in question the appellee, although she frequently visited her parents, not only lived and earned her livelihood away from the parental roof, but she sometimes worked for others in the fields and *earned and spent her wages without*, so far as the evidence discloses, *parental direction, interference, restraint or the assertion of any right to*

*her earnings.* The introduction of such evidence made the question of her emancipation one for the jury to determine. *The Haugh, Ketcham & Co. Iron Works v. Duncan, by Next Friend* (1891), 2 Ind. App. 264, 28 N.E. 334; 39 Am.Jur. Parent & Child, § 64." (Emphasis added.) 115 Ind.App. at 250–251, 57 N.E.2d 66.

In *Ramsey v. Ramsey*, (1889) 121 Ind. 215, 220, 23 N.E. 69, the court, in the course of a general discussion of the moral and legal obligations of a parent to support a child, stated:

"[I]f a minor child, who had reached years of discretion, *should abandon the paternal roof*, even though it were with the consent of his parents, *in order to escape domestic discipline or parental restraint*, it could not reasonably be inferred that he carried with him by legal implication the right to pledge his father's credit for support." (Emphasis added.)

In the case at bar there is evidence to show that, feeling restrained by parental authority, Kent chose to remove himself from his father's custody and control. At the same time, Kent chose to attempt to earn his own wages and spend his earnings without parental claim direction, or restraint. Applying our standard of review as stated in *Hurt, supra*, we cannot say that the trial court's decision was clearly erroneous. The trial court's judgment on this issue is affirmed.

*Issue III. Contempt*

In his answer and at trial Thomas conceded that, over the past eight years, he had fallen behind $5,150 in support payments. In his testimony before the trial court he offered to pay $20 per week for each of the unemancipated children, and $20 per week to retire the arrearage. The trial court found the arrearage to be $1,200, but made no finding of contempt or finding as to any excuse or reason for Thomas's noncompliance with the order. The trial court further made no provision to enforce the payment of the arrearage he found to be due. The record does not disclose any excuse advanced by Thomas for the nonpayment of

the admitted $5,150 arrearage. His whole defense centered around the emancipation of Kent and the credit due for the weeks the two boys lived with him. Thomas is remarried and earns $417 every two weeks. He maintains a home for his wife and a step-daughter. His wife is employed at a bank.

 The judgment is deficient because the trial court did not rule on this issue. It is axiomatic that a judgment must dispose of all issues of law and fact. 17 I.L.E. *Judgments* § 18 (1959). As implicit in its title, a ruling to show cause why Thomas should not be punished for contempt, upon a showing by petitioner that the support payments were not made in accordance with the order, casts the burden of proof upon Thomas to show justification or excuse. *Whitman, supra.* This burden Thomas has not carried. We are therefore of the opinion that Thomas was in contempt of court and the trial court should have so found. It may then have provided him with an opportunity to purge himself of contempt. *See Jahn, supra,* for similar result. We are not unaware of the content of Ind.Code 34–4–7–3, and the ruling in *Whitman, supra,* which states that wilfulness is required before there can be made a finding in contempt, and the presence of the requisite intent is a factual determination for the trial court, which will be set aside only upon a showing that there was no evidence to support such a determination. However, in that case there was found to be sufficient evidence that the disobedience was not willful. Here, no such evidence was offered.

We order a new trial on this issue insomuch as it is bound with Issue I.

*Issue IV. Attorney fees*

Ind.Code 31–1–11.5–16 empowers the court to award attorney fees, but the section uses the discretionary term "may." Thus, awarding attorney fees in divorce and contempt matters rests within the sound discretion of the trial court, and will be set aside only for abuse of that discretion. The court may consider the resources of each party in making that determination. *Ross, supra.*

The trial court made no disposition of the issue of attorney fees, violating the rule that a judgment must dispose of all of the issues in the case, both of law and of fact. 17 I.L.E. *Judgments* § 18. This issue could be corrected by remanding the same to the trial court for a ruling, but since we are granting a new trial on Issues I and III, and this issue is intricately connected with those two issues, we shall grant a new trial on this issue also.

Reversed in part, affirmed in part.

ROBERTSON and RATLIFF, JJ., concur.