Mary E. CASTRO, Petitioner-Appellant,

v.

Terrence C. CASTRO,
Respondent-Appellee.

No. 3–781A188.

Court of Appeals of Indiana,
Third District.

June 17, 1982.

Albert E. Marshall, Jr., Lay & Marshall, P. C., Gary, for petitioner-appellant.

Gregory S. Reising, Gary, for respondent-appellee.

GARRARD, Judge.

The appellant mother petitioned for a contempt citation against the father asserting his failure to comply with the terms of the support order entered upon the dissolution of their marriage on October 7, 1975. The order required the father to pay $100 every two weeks to the clerk of the court for the use and benefit of the minor children of the parties.

At the hearing on April 6, 1981 it appeared that the records in the clerk's office disclosed a deficiency in support payments of $2,830 which included an arrearage of temporary support found owing at the time of the dissolution. The father testified, however, that subsequent to the dissolution, whenever he missed a payment at the clerk's office he paid the money directly to the mother. He testified that he had destroyed the receipts for direct payments made from 1975 to 1978 after the parties reached an agreement in June 1978 concerning a prior support dispute. He introduced in evidence receipts from the mother for direct support payments made in 1980. In her testimony the mother acknowledged

that the father had made direct payments, stated that she did not know how much he had paid directly, and stated that she did not know whether the father had missed any payments since June 1978.

The court found that the father was not in arrears and not in contempt. This order was subsequently modified to show that the father did still owe a delinquency of $310 from the temporary order prior to the dissolution. The mother appeals.

We are thus once again confronted with the problems engendered where a parent with an adjudicated responsibility to provide support makes payments in a manner other than that provided in the court's order.

We are cited to the decisions in *Whitman v. Whitman* (1980), Ind.App., 405 N.E.2d 608 and *Isler v. Isler* (1981), Ind.App., 422 N.E.2d 416, *reh. denied* Ind.App., 425 N.E.2d 667, as standing for the proposition that an obligated parent is not entitled to credit for payments not specifically conforming to the terms of the support order. The dissent would acknowledge that rule subject to an exception for non-complying payments which are supported by written receipts.

We believe that the "no-credit" rule of *Whitman* and *Isler*, while conceived in an effort to simplify and reduce the amount of litigation concerning compliance with support orders, is contrary to the basic grain of American jurisprudence and perhaps arrogates to the judicial system an importance in the daily lives of ordinary people which we neither do, nor should, enjoy.

■ Before proceeding and in order to establish the confines of our disagreement, it may be well to point out several propositions in this area which do not cause any concern. It is proper that an order in gross for the support of several children be not reduced pro rata by the emancipation or death of one of the children without a judicial modification of the decree. *Reffeitt v.*

*Reffeitt* (1981), Ind.App., 419 N.E.2d 999. Nor is the court required to give credit for such things as clothes, toys and entertainment provided directly to children, *Whitman, supra*, or for the "actual" support provided by the non-custodial parent during short periods of stays with that parent. *Jahn v. Jahn* (1979), Ind.App., 385 N.E.2d 488. Concerning clothing, toys, etc. there is available a reasonable inference that the benefits conferred directly upon the child are gifts occasioned by filial love rather than judicially ordered support payments. In the instance of short stays, as with an order in gross for the support of more than one child, there is a presumption that the court order was to provide for support on an ongoing or annualized basis although the order speaks in terms of weekly or some other form of periodic payment.[1] On that basis we may presume that such matters were sufficiently considered by the court when it established the order. Where they were not, a petition to modify may lie.

There were two distinct issues involved in the case before us: (1) Was the father delinquent in the payment of support and, if so, how much; and (2) was he in contempt of court?

Concerning the first issue, we agree that the record of support payments maintained by the clerk's office establishes a prima facie case of both the existence and amount of delinquency.

■ As to the charge of contempt, however, guilt is not the *a fortiori* result of delinquency. Contempt of court, generally speaking, consists of disobedience to the court by acting in opposition to the authority, justice and dignity thereof. *Rooker v. Bruce* (1908), 171 Ind. 86, 85 N.E. 351. Depending upon the particular facts the court may determine that the conduct in question did not constitute a contempt, or at least not such a wilful contempt as to be worthy of punishment or coercion. On the other

---

1. For example, in computing the amount of a weekly support obligation, the court will normally include a consideration for clothing although all present might acknowledge that substantially all the clothing purchased for the child will be acquired before school commences in the fall and at the commencement of summer.

hand, upon a proper factual setting it is quite conceivable that a parent could be guilty of contempt for refusing to comply with a court order requiring payments to be made through the clerk's office even though there was no delinquency as to the amount actually paid.

As to the existence and amount of any delinquency, it seems to us that those *are* the substantive questions. Money actually paid and received in discharge of a judicially declared obligation of support is just that. We should no more say that it is not because it was not paid through the clerk's office, than we should say that having commenced suit, parties should not be permitted to settle their differences without court approval, or that because a mother failed to comply with the court's order as to visitation, she has no standing to enforce a claim for support.

The problem is thus in reality an evidentiary one, and for that reason we cannot accept the dissent's distinction between signed receipts and other evidence of payment. Of course, a receipt signed by the mother is much less open to dispute than a father's simple verbal assertion that he paid. But these are questions of weight and credibility, not of the propriety of the proof. Accordingly, they may and should properly be resolved by the trier of fact.

It is certainly true, as the *Whitman* court intimated, that payment through the clerk's office provides protection to both parties and departure from that practice provokes disputes and litigation. It is also true that the custodial parent must share the responsibility occasioned by her acquiescence. We recognize that as a practical matter in most post-dissolution situations a custodial mother is unlikely to feel that she has the latitude to reject a proffered direct and due (or overdue) support payment on the grounds that the father must pay it through the clerk's office. Acceptance of that proposition as real does not, however, preclude her from notifying the clerk's office of the date and amount of payment or of bringing other pressures to bear to require the father to fully comply with the terms of the court's order.

■ Turning to the facts at hand, the records maintained by the clerk's office disclosed a deficiency. A prima facie case for the amount thereby established was thus made out. The father then testified that he had in fact made all those payments directly and that there was no delinquency. He explained his discarding of prior receipts upon the occasion of a previous settlement and proffered more recent receipts as evidence of his course of conduct. In response the mother admitted that he made direct payments *of support*, and stated that she had no personal opinion as to whether he was in arrears or not. Additionally, it must be recalled that the trial judge had the opportunity to observe the witnesses and draw upon those observations. Under these circumstances it appears the court was amply justified in reaching its conclusion.

The judgment is, therefore, affirmed.

HOFFMAN, P. J., concurs.

STATON, J., dissents and files separate opinion.

STATON, Judge, dissenting.

I dissent. Ind.Code 31–1–11.5–13 authorizes the court to order that all support payments be made to the clerk's office as immutable, indisputable proof of payment. I believe that, without judicial modification, an obligated parent should receive no credit for payments which do not conform to the order for child support. *Isler v. Isler* (1981), Ind.App., 422 N.E.2d 416, *rehearing denied*, 425 N.E.2d 667; *Whitman v. Whitman* (1980), Ind.App., 405 N.E.2d 608. This rule barring credit for non-conforming payments derives from the following language in *Stitle v. Stitle* (1964), 245 Ind. 168, 197 N.E.2d 174. The obligated parent is

> "required to make the payments in the manner, amount and at the time required by the support order embodied in the divorce decree, at least until such order (is) modified or set aside."

*Id.* at 182, 197 N.E.2d at 183. I believe that Ind.Code 31–1–11.5–13 promotes certain

and predictable payments which insure that the best interests of the child remain paramount in the period of post-divorce strife between often embittered former spouses.

This "seemingly inflexible rule"[1] does not exclude all equitable exceptions for the substantial compliance with the trial court's support order. Where the obligated parent has made payments by personal check, money order, or cashier's check and has maintained a record of such payments, the amount of support paid or the amount of arrearage due can be easily and accurately determined by the court. But, the mere undocumented assertions of payment by the obligated parent or the testimony of the obligated parent that the equivalent has been made through the giving of a toy, a suit of clothing, or a gift of cash is noncompliance with the support order. Such undocumented assertions of payment or substitute payments do not only foment confusion, uncertainty, and continued litigation in court between the parents, but it does not serve the best interests of the child. The custodial parent has the responsibility to determine the needs of the child in regard to food, clothing, and other necessities. Therefore, the only equitable exception that is compatible with the best interest of the child and at the same time substantial compliance with the court's support order is documentary evidence which supplements the clerk's records. No other equitable exception should be permitted.

The majority's reasoning is specious. While the majority casts the "no-credit" rule as "contrary to the basic grain of American jurisprudence," and as a meddlesome display of judicial arrogance, the majority surprisingly overlooks the statutory and public policy basis of the "no-credit" rule found in Ind.Code 31-1-11.5-13. The documentary evidence requirement insures the best interests of the child will be served expeditiously as well as promotes finality in litigation.[2] Indeed, the documentary evidence requirement is central and fundamental to our law defining the payment of judgments. Ind.Rules of Procedure, Trial Rule 67(B).

Where an arrearage is alleged, the trial court can take judicial notice of its own support records.[3] A better practice would be the introduction of a certified copy of the court's support records by the custodial parent claiming the arrearage.[4] Once this was accomplished and an arrearage appeared according to the court's records, a prima facie case of arrearage is established. The obligated parent would be permitted to show substantial compliance with the trial court's support order by presenting documentary evidence which would establish current payments of support. This procedure was not followed in the present case, and there is no assurance that the best interests of the child have been protected nor is there any showing of substantial compliance with the court's support order; therefore, I would reverse the judgment of the trial court and remand for further proceedings not inconsistent with this dissenting opinion.

---

1. This terminology was used by the First District in *Isler v. Isler* (1981), Ind.App., 422 N.E.2d 416, in its opinion denying the petition for rehearing, 425 N.E.2d 667, 668.

2. The majority forgets that the obligated parent can seek modification of the support order under Ind.Code 31-1-11.5-17(a) and, thereby, prevent child support payment disputes.

3. A court judicially notices its own records. *Young v. State* (1980), Ind.App., 413 N.E.2d 1083; *Starkie v. State* (1943), 113 Ind.App. 589, 49 N.E.2d 968.

4. A certified copy of the support payment record may be admitted to the trial court record as provided by Ind.Code 34-1-17-7.