**In re the Marriage of**

**Alicia A. O'CAMPO, Appellant–
Petitioner,**

v.

**David B. O'CAMPO, Appellee–
Respondent.**

**No. 01A02–9111–CV–483.**

Court of Appeals of Indiana,
Second District.

Aug. 27, 1992.

Linley E. Pearson, Atty. Gen., Gordon E. White, Jr., Deputy Atty. Gen., Eve Kwasneski Scott, Adams County Prosecutor's Office, Decatur, for appellant-petitioner.

SULLIVAN, Judge.

Alicia O'Campo (Wife) appeals the trial court's order reducing the amount of child support paid to her by David O'Campo (Husband).

We reverse.

Upon appeal Wife presents two issues, which we restate as one:

I. Whether a trial court may *sua sponte* reduce the amount of child support when a petition to modify support has not been filed, and if so, whether the court may *sua sponte* so reduce without applying the Indiana Child Support Guidelines?

The marriage of David O'Campo and Alicia O'Campo was dissolved by a Decree of Dissolution on August 23, 1978. Wife was granted custody of the four minor children of the marriage. At the time of dissolution the children's ages were 17, 15, 8, and 3. Husband was ordered to pay $78.00 per week child support, and to pay $10.00 per week against a support arrearage accumulated at the time of the final decree. Between the dates of the Decree of Dissolution and the action from which the trial court issued the order before us upon appeal, Husband was ordered to appear in court four separate times for nonpayment of support.

Pursuant to an order to appear and show cause, the court conducted a hearing on July 26, 1991. The order was based upon Wife's Verified Motion, which was filed as a result of Husband's nonpayment of support. At the hearing, Husband testified that he was unemployed, and as a result, was drawing unemployment compensation in the amount of $96.00 per week. Upon questioning by the court, Husband revealed that he was unsure of the amount of his income in 1990, stating that it was "something like" $12,000–$15,000. Husband testified that the oldest child had moved out of Wife's home in 1978, the second oldest left home in 1981, and the third child left home sometime in 1990. He testified to his understanding that his support payments supported one child (the sixteen-year-old still living at home).

At the hearing, the trial court expressed concern that the amount reflected in the original support order had been based upon four children, and that it had never been

modified although three of the four children had since become emancipated. In effect, the court was concerned that Husband "MIGHT STILL BE PAYING SUPPORT FOR A THIRTY YEAR OLD KID." Record at 136. Wife, represented by the County Prosecutor, responded that the instant support order was "in gross", and the court therefore was without authority to reduce the amount of the support payment as each successive child was emancipated.[1] The court was not convinced:

"THE COURT: YOU [STATE] PULL OUT THE STATUTE AND SHOW ME. I DARE YOU.... IN THIS PARTICULAR CASE THE FACT THAT IT SHOWS THAT ELEVEN YEARS HAS PASSED AND THERE IS NO ACCOMMODATION OR NO CHANGE. I STILL AM ABSOLUTELY CONCERNED ABOUT YOUR [HUSBAND'S] RIGHTS. THAT DOESN'T MEAN THAT YOU DON'T HAVE AN OBLIGATION AND THEREFORE I WILL MAKE A DECISION AND RENDER AN ORDER IN THIS CASE. BUT BASICALLY I'M REDUCING YOUR SUPPORT TO TWENTY–FIVE DOLLARS PER WEEK." Record at 148–49.

The court made no determination as to the amount of arrearage.

■ We note that Husband has not filed an appellate brief. When an appellee has not filed a brief supporting a trial court's ruling, the appellant need only establish a *prima facie* showing of error to achieve reversal. *State v. Costas* (1990) Ind., 552 N.E.2d 459.

Wife cites *Gielsdorf–Aliah v. Aliah* (1990) 3d Dist.Ind.App., 560 N.E.2d 1275 in support of her contention that a trial court is without authority to *sua sponte* modify a support obligation because such a modification may only result from a petition to modify.

In *Aliah,* the mother filed a petition asking the trial court to specify the meaning of the phrase "reasonable visitation", as contained in the divorce decree. At the hearing, the court *sua sponte* modified the mother's support obligation in order that her obligation be in accord with the amount arrived at by application of the support guidelines. In reversing the trial court's modification, our Third District examined Support Guideline 3B and determined that there is no provision in the guidelines that *mandates* that a trial court *sua sponte* modify a support amount which does not mirror the amount reflected by the application of the guidelines. The specific holding in *Aliah* is

"Where parents agree that the needs of their children are being met under an existing order, and neither is petitioning the court for modification, *the court is not required to initiate modifications to conform existing orders to guideline amounts.*" [Emphasis supplied] 560 N.E.2d at 1277.

*Aliah* is inapplicable because it addresses only the question of whether a trial court *must* modify a support order in certain circumstances, and should not be understood to preclude a trial court from modifying a support order in any case in which a petition to that effect has not been filed.

The court's discretion in this regard is not guided by such rigid adherence to form as Wife urges. Rather, the court's paramount consideration must be the child's best interest. *State ex rel. Werthman v. Superior Court of Marion County* (1983) Ind., 448 N.E.2d 680. This principle is reflected in our decision in *Chance v. Chance* (1980) 2d Dist.Ind.App., 400 N.E.2d 1207.

In *Chance,* the appellant-wife filed a Petition for Instructions stemming from a dispute as to the meaning of the visitation provisions in her decree of dissolution. At the hearing upon the petition, the trial court reduced the amount of support to be paid to the wife during summer visitation.

---

1. The authorities cited by wife, *Isler v. Isler* (1981) 1st Dist. Ind.App., 422 N.E.2d 416, and *Reffeitt v. Reffeitt* (1981) 3d Dist. Ind.App., 419 N.E.2d 999, support her proposition that a support order in gross may not be unilaterally reduced by the non-custodial parent. They do not, however, support the proposition that such support orders may not be modified. To the contrary, the cases clearly hold that upon petition such support may be modified although such modification may not be made retroactive.

Neither party had filed a petition for modification of the existing support agreement. This court reversed the modification, stating:

> "The issue of reduction in child support was not raised in the Petition for Instructions. *Furthermore, the issue was not tried to effect an amendment of the pleadings under Ind.Rules of Procedure, Trial Rule 15(B)."* [Emphasis supplied] *Chance, supra,* 400 N.E.2d at 1211.

Implicit in our discussion is the understanding that modification of support in the absence of a petition is permissible under limited circumstances. This may occur when, for example (as suggested in *Chance* ), the issue has actually been litigated (i.e., by introducing evidence in that regard), or upon oral motion of either party.

Our review of the record reveals that the instant modification did not result from a petition or an oral motion. More importantly, we find nothing of record indicating that the issue was impliedly litigated. There simply was not enough information before the court from which it could properly determine an appropriate support amount. In short, the court's modification was without basis. Therefore, the trial court was without authority to *sua sponte* inject the issue and enter a judgment for a seemingly arbitrary amount[2] without first considering facts relevant to the application of the Indiana Child Support Guidelines. *See Lepper v. Lepper* (1987) Ind., 509 N.E.2d 818, 821.

We reverse and direct the trial court to vacate the support modification order.

SHIELDS, J., concurs.

CONOVER, J., dissents with opinion.

CONOVER, Judge, dissenting.

I respectfully dissent.

Under statutory law, an obligated parent's duty to support a child terminates when the child becomes emancipated or reaches twenty-one. IND.CODE 31-1-11.5-12; IC 31-1-11.5-17; *Ross v. Ross* (1979), Ind.App., 397 N.E.2d 1066, 1068. However, our courts have adopted the rule that when an undivided (in gross) order is involved, an obligated parent may not unilaterally reduce support payments to reflect emancipation of a child or children as long as at least one unemancipated child covered by the order remains. The rule requires a parent to notify the court of emancipation before any modification of the prior order is made. The rule is designed to prevent the chaos which results when undocumented unilateral changes are later contested.

In the present case, the issue of nonpayment of child support was before the trial court. In my opinion, the raising of that issue perforce opened up the related question of the reasonableness of continuing the terms of the prior order. Accordingly, I do not find *Chance v. Chance* (1980), Ind.App., 400 N.E.2d 1207, to be controlling.

At the hearing on this matter, it became obvious to the trial court Husband was 1) poorly represented by past counsel, 2) substantially behind in paying support, 3) currently unemployed and living on unemployment benefits, 4) totally confused by the legal process, and 5) completely unable to afford an attorney. It was obvious to the trial court that everyone, including Wife and the prosecutor, knew three of Husband's four children were emancipated. In fact, at the time of the hearing two of the children had been emancipated for nearly a decade. It was also obvious Husband would never be able to pay the amount previously ordered; the already large arrearage would continue to balloon. Upon this evidence, the trial court recognized the inequity of continuing a child support order which had no basis in reality. It also recognized the inequity of the State hiding behind the "in gross" rule to force a contin-

---

**2.** Although the support order modification here does not appear to be occasioned by an attempt on the part of the trial court to offset support earlier paid for children who had already attained the age of majority, it is clear that the modified amount did not reflect a consideration of appropriate data, of which there was little before the court.

uance of the unfair order, especially since the purpose of the rule was not served by the State's position. Thus, the court temporarily modified the order, subject to a future "full fledged hearing." (R. 149).

I would affirm the trial court's most equitable ruling.