**In re the Marriage of Michele G. BENDIX, Petitioner–Appellant,**

v.

**William R. BENDIX, Respondent–Appellee.**

**No. 71A03–8902–CV–70.**

Court of Appeals of Indiana, Third District.

March 5, 1990.

Thomas F. Grabb, South Bend, for petitioner-appellant.

Thomas P. Loughlin, David V. Bent, Bingham, Loughlin, Mick & Bent, Mishawaka, for respondent-appellee.

HOFFMAN, Presiding Judge.

Petitioner-appellant Michele G. Bendix (Wife) appeals from a trial court ruling that respondent-appellee William R. Bendix (Husband) was not in arrears in the payment of child support. The facts relevant to this appeal are summarized below.

Husband and Wife were married on July 4, 1964. Four children were born of the marriage: Lisa, Teresa, William and Eva. The marriage was dissolved on September 14, 1984. The trial court awarded custody of the children to Wife and ordered Husband to pay to the court clerk for the

support and maintenance of the children the sum of $50.00 per week, per child.

In August of 1987, Wife filed a verified information in contempt, alleging that Husband was in arrears in the payment of child support. Husband responded with a verified petition for modification of support. The court ruled:

"Although much evidence was introduced concerning the alleged arrearage in the payment of support by the husband and there having been introduced into evidence the clerk's payment records, a large number of canceled checks showing payments made to wife directly and the the [sic] children directly, and the testimony was conflicting, but the Court having had the opportunity to see and hear both parties and recognizing the stormy relationship between them during the years since their marriage was dissolved and the problems arising from the children moving in and out of the family residence over the years, now finds for the husband and against the wife that there is no arrearage...."

Wife presents three issues on appeal:

(1) whether the trial court erred by crediting Husband for support payments made directly to the children;

(2) whether the trial court erred by crediting Husband for the time the children spent away from the home maintained by Wife; and

(3) whether the trial court erred by failing to award Wife a sum for home repair expenses and optical expenses.

The support obligation incurred by Husband from the date of dissolution through August 15, 1987 totalled $30,600.00. Records kept by the court clerk showed that Husband made payments during that period of time totalling only $13,800.00. Defending against Wife's claim of arrearage, Husband argued that he was entitled to credit for support payments made directly to the children in the sum of $5,485.39. The lower court apparently credited Husband for those payments.

■ As a general rule, an obligated parent will not be allowed credit for payments not conforming to the support order. *O'Neil v. O'Neil* (1989), Ind., 535 N.E.2d 523, 524. However, certain narrow exceptions to this general rule have been recognized. For example, in *Castro v. Castro* (1982), Ind.App., 436 N.E.2d 366, this Court indicated that an obligated parent may be entitled to credit for child support payments made directly to the custodial parent. The trial court may recognize and credit technically nonconforming payments of a judicially declared support obligation when proof is sufficient to convince the trier of fact that the required payments were actually made by the obligated party to the person entitled thereto. *Id.* at 368.

■ Support payments made directly to the children do not fall within the exception acknowledged in *Castro,* because the payments are not made to the person entitled to receive the funds. Certainly, the children are the intended beneficiaries of a support order. IND. CODE § 31–1–11.5–12 (1988 Ed.). Yet the custodial parent is the person entitled to receive the support payments in his or her fiduciary capacity. *See In re Marriage of Honkomp* (1978), 178 Ind.App. 68, 69, 381 N.E.2d 881, 882.

A second exception to the rule regarding the denial of credit for nonconforming payments was articulated in *Payson v. Payson* (1982), Ind.App., 442 N.E.2d 1123. Credit for nonconforming payments may be allowed when the parties have agreed to the alternate method of payment. *Id.* at 1129. There was no evidence in the instant case that Wife agreed to the payment of support directly to the children. Therefore, the exception identified in *Payson* is inapplicable to the case at bar.

Practical considerations militate against the recognition of support payments made directly to the children. The custodial parent is entrusted with the duty and the right to dictate how the child support should be spent. *Whitman v. Whitman* (1980), Ind. App., 405 N.E.2d 608, 612. Credit for support payments tendered directly to the children would permit the obligated parent to

usurp the right of the custodial parent under the support order to determine the manner in which support payments should be spent. *Id.* at 613.

An analysis of case law, as well as a reluctance to undermine the authority of the custodial parent in directing the expenditure of funds received as child support, compels the conclusion that the lower court erred in this case. Husband was not entitled to credit for support payments made directly to the children in the sum of $5,485.39. *Accord: Breedlove v. Breedlove* (1981), Ind.App., 421 N.E.2d 739, 744.

■ Husband also contended, and the trial court apparently agreed, that he was entitled to credit for the time the children spent away from the home maintained by Wife. Under limited circumstances, the obligated parent may be entitled to credit for the time the child spent with him or her.

"[A] narrow exception to the rule [requiring payments in conformity with the support order] may exist in a case where the obligated parent, by agreement with the custodial parent, has taken the child or children into his or her home, has assumed custody of them, has provided them with food, clothing, shelter, medical attention, and school supplies, and has exercised parental control over their activities and education for such an extended period of time that a permanent change of custody is demonstrated."
*Isler v. Isler* (1981), Ind.App., 425 N.E.2d 667, 670.

■ Husband testified at length regarding the number of weeks during which each child was absent from the home maintained by Wife. Significantly, however, the time for which Husband sought credit was not necessarily time during which the children were residing with Husband. A review of the record discloses that Husband apparently received credit for periods when the children were living with friends or attending college. To award credit in such instances clearly exceeds the scope of the exception identified in *Isler, supra.*

■ It appears that Husband also received credit for the short periods of time during which his daughters, Lisa and Teresa, lived with him, again in contravention of *Isler.* Lisa lived with Husband from the date of dissolution until Husband relocated to Indianapolis a few months later. Teresa lived with Husband during the summer of 1986, between her freshman and sophomore years at Purdue University. The weeks during which Lisa and Teresa lived with Husband did not constitute an extended period of time from which a permanent change of custody could be inferred. Accordingly, Husband was not entitled to credit for those weeks.

■ Husband demonstrated a permanent change of custody, as required by *Isler,* only with respect to daughter, Eva. Eva left Wife's home in Mishawaka on November 3, 1985, and she lived with Husband in Fort Wayne for 31 weeks. Wife explained the circumstances surrounding Eva's departure from her home:

"... I said I was not going to live this way, that either she was going to come home or she was going to leave, and I did put her things in boxes and I gave them to her and I told her that she was not going to do this.

\*　　\*　　\*　　\*　　\*　　\*

Q Well, where did she go? I'm trying to make a point here. Where did she go? Was she living in Fort Wayne with her father?
A She lived with her father in Fort Wayne from November of 1985 to June 1st of 1986.
Q At any time during that period did he return her?
A No. Well, she came at Christmas. I didn't see her—
Q But she went back?
A Right.
Q She was supposed to be living with you?
A Right.

\*　　\*　　\*　　\*　　\*　　\*

Q Did you acquiesce in this living arrangement?
A I consulted attorneys. I said what can I do. They said you cannot make a person take custody of somebody who

doesn't want to take custody of somebody. I was told there was very little I could do unless she wanted to return home."

The evidence reveals that Husband took Eva into his home for an extended period of time, namely 31 weeks, with Wife's implicit agreement to the living arrangements. During that time, Husband provided Eva with food, clothing, shelter, medical attention and school supplies. Husband was, therefore, entitled to credit against the arrearage in support payments for the 31 weeks during which he had assumed custody of Eva.

Apart from her contention that Husband was in arrears in the payment of child support, Wife presented a claim for the payment of certain home repair expenses. The dissolution decree specified that "repairs costing more than $100 per repair should be paid by the parties equally." Wife submitted proof of four such repairs, totalling $797.70. The lower court erred by failing to order Husband to pay $398.85 towards those repairs.

Wife also sought to recover optical expenses in the amount of $60.00 incurred on behalf of son, William. The matter of optical expenses was addressed in the dissolution decree: "The husband should pay all optical expense for the four minor children not covered by medical expense insurance maintained by either or both of the parties." Husband should have been ordered to reimburse Wife for the optical expenses.

To summarize, the trial court improperly credited against the support arrearage those payments made by Husband directly to the children. The court further erred when it credited Husband for the time the children were absent from Wife's home; Husband was entitled to credit only for the 31 weeks during which he assumed permanent custody of daughter, Eva. Lastly, the court erred by failing to award to Wife $398.85 for home repair expenses and $60.00 for optical expenses.

Judgment reversed and remanded for entry of judgment pursuant to this opinion.

GARRARD, J., concurs.

SULLIVAN, J., concurs in result.