**Marjorie BROWN, Appellant,**

v.

**James A. BROWN, Appellee.**

**No. 74A04–9009–CV–433.**

Court of Appeals of Indiana,
Fourth District.

Nov. 25, 1991.

David L. Henry, Tell City, for appellant.

Jeffery L. Lantz, Evansville, for appellee.

CONOVER, Judge.

Petitioner-appellant Marjorie Brown appeals the Spencer Circuit Court's order concerning an alleged arrearage in support payments of her former husband James A. Brown.

The issues in this appeal are

1. whether the trial court improperly entered a retroactive support order which reduced the amount of support arrearage due Marjorie, and

2. whether the court improperly allowed James a credit against his arrearage for support money paid directly to his daughter and not to the court clerk or to Marjorie.

When the Browns' marriage was dissolved in 1983, they had four unemancipated minor children, Kemuel born in 1965, Kenneth born in 1966, Kelvin born in 1968, and Christine born in 1970. The marriage was dissolved after a hearing and the entry of two separate dissolution decrees. Both, however, provided for an "undivided support order" for the children of $225 per week. The first decree, entered on November 4, 1983, provided in part

6. That the Husband should pay to the *Clerk of this Court* for the use of the Wife in supporting the minor children of the parties, the sum of Two Hundred Twenty–Five Dollars ($225.00) per week ... continuing weekly thereafter until further order of this court.... (Emphasis added).

(R. 12). The December 27, 1983, decree said

SUPPORT

That the husband shall pay the sum of Two Hundred and Twenty–Five Dollars ($225.00) each week for the support of the parties' minor children, together with all reasonable and necessary medical, dental, and optometric expenses incurred for the benefit of said children. Provided however, that said support shall commence as of Friday, the 28th day of October, 1983, and shall continue each Friday thereafter *until said children all attain the age of twenty-one years*, until all of said children are emancipated, or until further order of the Court.... (Emphasis added).

(R. 24). It did not require support payments to be made to the clerk.

Pursuant to James' later petition to reduce his support payments, the trial court entered an order in January, 1986, which read in part

... neither Kemuel Brown or Kenny Brown is emancipated at this time. Court declines to grant any relief to the husband on his Petition to Modify.

Without issuing a prospective opinion, the Court would note that Kemuel will be emancipated on his 21st birthday. Court would also note that if everything else remains the same between now and the date of emancipation of Kemuel Brown, that the support herein would be reduced to approximately $175 per week.

\* \* \* \* \* \*

IT IS THEREFORE ORDERED AND ADJUDGED by the Court that *the above findings be made the Order of this Court without further enumeration.* (Emphasis added).

(R. 27). At the time that order was entered, Kemuel would reach the age of twenty-one in six months.

In January, 1990, Marjorie filed a request for a rule to show cause against James for non-payment of support. James in turn filed a petition to modify the support order. After a hearing in which both matters were heard simultaneously, the court entered the following order in March, 1990

The Court finds that there has been a continuing change of circumstances since the prior orders. All of the parties' children are emancipated except for Christine. In accordance with the Indiana Support Guidelines, the husband shall pay to the wife for the benefit of the minor child at the rate of $100 per week. This amount shall be retroactive to the time that the Petition to Modify was filed.

The Court finds that the support obligation of the husband was $175 per week after July 30, 1986. Any attempt at oral modifications after that date were unsuccessful. The Court finds that the husband paid support directly to Christine for a period of time and that these payments were with the knowledge and acquiescence of the wife. Based on the above, the Court finds that a support arrearage exists in the amount of $10,700. The Court further finds that this amount shall bear interest at 1% per month as provided by I.C. 31–6–6.1–15.–5....

(R. 36).

Initially, James made his support payments to the clerk's office from September 30, 1983, through June 3, 1988, and again from February 20, 1990, through March 19, 1990. He paid his support money directly to his daughter Christine from June 17, 1988, through February 12, 1990.

His support payments were in the sum of $225 per week until July 30, 1986. Thereafter, he reduced them to $175 per week. In April of 1987, when Kelvin got married, started his family, and went out on his own, James reduced his support payments to $125 per week. Kenny reached 21 years

of age on August 2, 1987, and his father then reduced his support payments to $100 per week. In June of 1988, he started paying the $100 per week support payment directly to Christine. He claims he paid the support directly to Christine upon Marjorie's request. Marjorie denied she made the request, and petitioned the court for a rule to show cause in 1990. James then resumed his $100 support payments to the clerk.

At the hearing which resulted in the trial court's March 23, 1990, order, it heard evidence and Marjorie's contention the total arrearage was $40,950, $30,250 more than James' conceded $10,700 arrearage. Her calculations assumed the original $225 per week order had not been modified. That hearing resulted in the trial court's March, 1990, order, quoted above.

Marjorie appeals.

■ She first contends the trial court's March, 1990, order is, in effect, nothing more than a retroactive reduction of James' $225 per week support payments and thus improper. We disagree.

The trial court's December, 1983, order set weekly support for these parties' four minor children at $225 per week. James paid that amount until 1986 when he filed a petition to reduce the payments. The trial court denied James' petition at that time, but "noted" Kemuel would soon be 21 years of age and "emancipated" at that time. The court further stated

... [I]f everything else remains the same between now and the date of emancipation of Kemuel Brown, that the support herein would be reduced to approximately $175 per week.

\* \* \* \* \* \*

IT IS THEREFORE ORDERED AND ADJUDGED by the Court that the above findings be made the Order of this Court without further enumeration.

(R. 27). Marjorie does not contend Kemuel did not reach the full age of 21 years, or educational needs of any of the children required support to continue past their attaining majority. In essence, she contends the trial court's January, 1986, order had

no effect upon the original $225 per week support order.

■ IND.CODE 31–1–11.5–12 regarding child support succinctly states

(d) The duty to support a child under this chapter ceases when the child reaches twenty-one (21) years of age unless:

(1) The child is emancipated prior to reaching twenty-one (21) years of age

. . .

However, where a father is obligated to pay a specified amount of undivided support for more than one child, he must pay that specified amount until either (a) his support payments are modified by court order, or (b) all of his children are emancipated [or reach the full age of 21 years]. *Isler v. Isler* (1981), Ind.App., 422 N.E.2d 416, 418–419, *reh. den'd.*, 425 N.E.2d 667; *Whitman v. Whitman* (1980), Ind.App., 405 N.E.2d 608, 611.[1] In effect, child support as to the remaining children automatically increases, even though the legal obligation to support one child terminates at majority, under the above precedent.

The pivotal court order in this case is, of course, the one entered on January 15, 1986. If by its terms that order reduced the $225 weekly support payments to $175 per week as of the date Kemuel reached his majority, James' version of the amount of arrearage holds water. If, however, it was merely an order presently denying James' then application to reduce support payments and nothing more, Marjorie's contentions are correct. Reversal would then be required because the order appealed from would constitute a prohibited retroactive modification of support.

The court's January, 1986, order is unquestionably ambiguous. In its findings the court said "[w]ithout issuing a prospective opinion, the Court would note [Kemuel would be 21 in 6 months]," and "Court

would also note that if everything else remains the same [until Kemuel's 21st birthday] the support herein *would be reduced to approximately* $175 per week." The order ended with this language

IT IS THEREFORE ORDERED AND ADJUDGED by the Court that *the above findings* be made *the Order of this Court* without further enumeration. (Emphasis added).

(R. 27).

■ A judgment is ambiguous when it would lead two reasonable persons to different conclusions as to its effect and meaning. When construing the language of a judgment, the reviewing court will attempt to read all of the provisions thereof so as to render them all effective. In construction of a judgment, the reviewing court may look at the entire record, including but not limited to the complaint, findings, argument, and evidence, to ascertain its meaning and effect. *Ayres v. Smith* (1949), 227 Ind. 82, 84 N.E.2d 185, 190; *Ind. & Mich. Elec. Co. v. Harlan* (1987), Ind.App., 504 N.E.2d 301, 307–308, *reh. denied, trans. denied.* Judgments should be liberally construed so as to make them serviceable instead of useless, and necessary legal implications are included though not expressed in terms. *Ayres, supra*, at 190.

Following the mandates of the above precedent, we determine the trial court's January 15, 1986, order had prospective application regarding the reduction of support to $175 per week when Kemuel reached his 21st birthday. In the first place, there was no need for the trial court to gratuitously comment in writing on Kemuel's approaching majority if it simply intended to deny James' application for support reduction and nothing more. Next, James' legal obligation to support

---

1. We discern the parties and the trial court were using the term "emancipation" to mean the time when each child reached its "majority", that is, when each reached the full age of 21 years. "Emancipation" occurs when a minor child becomes free of the care, custody, and control of its parents while still a minor. *Stitle v. Stitle* (1964), 245 Ind. 168, 197 N.E.2d 174, 183; *Green v. Green* (1983), Ind.App., 447 N.E.2d 605, 609. Absent special circumstances, the obligated parent's general duty to support a child ceases upon the happening of one of two events: (a) its emancipation while yet a minor, or (b) upon its reaching the full age of 21 years. *Martin v. Martin* (1986), Ind., 495 N.E.2d 523, 525; IC 31–1–11.5–12(d). Since the parties presented no evidence nor contend any of these children were "emancipated" as above-defined while still minors, we assume when they speak of "emancipation" they mean their children reaching age 21 as the "emancipating" event. We review this case giving that term the meaning adopted by the parties.

Kemuel ceased on his birthday 6 months later, but subject to the requirement the undivided support payment remain the same unless reduced by the court. *Isler, supra.* The trial court obviously intended to honor James' statutory right in this regard.

The anomalies were resolved, however, when the court made the findings its order "without further enumeration." By so doing, the "approximate" weekly figure became firm, subject to a future showing that changed circumstances required the $175 reduced support figure to be more or less. The judge's comment he was not issuing a "prospective opinion" referred to the precise amount of the support figure when it became effective in the future. The judge could not then determine whether future circumstances would require an increase or decrease in the $175 weekly sum specified when Kemuel reached age 21.

Finally, a look at the entire record demonstrates the trial court intended its January, 1986, order to be a prospective order to take effect on Kemuel's 21st birthday, as to reduction of weekly support to $175. The same trial judge entered all orders mentioned above, including the one here appealed. In the trial court's 1990 order, the trial judge said

> ... The Court finds that the support obligation of the husband was $175 per week after July 30, 1986....

(R. 36). That statement makes crystal clear the meaning of the court's 1986 order. It does not make the 1990 order retroactive. Further, Marjorie never applied for an increase in James' $175 weekly support payments after he began paying that amount. The record itself supports our construction of the trial court's 1986 order here at issue.

■ Finally, Indiana law does not prohibit the issuance of prospective support orders in marriage dissolution cases. Where a support order provided current and future Social Security payments for a child's support were to serve as a disabled parent's contribution to support of a minor, the order did not violate the statutory provision against modification of child support only upon a showing of changed circumstances. *Patrick v. Patrick* (1988), Ind. App., 517 N.E.2d 1234, 1237. Also, an order tying support payments to the consumer price index did not violate that requirement. *Brandstad v. Brandstad* (1980), Ind.App., 400 N.E.2d 167, 170–171. The trial court's January, 1986, order reducing support payments became effective on July 7, 1986. We find no error here.

■ Marjorie also contends James should not have been given credit for payments made directly to Christine, citing *Pickett v. Pickett* (1984), Ind.App., 470 N.E.2d 751, and *Bendix v. Bendix* (1990), Ind.App., 550 N.E.2d 825, *trans. denied.* We first note the court's second dissolution support order which governs here does not provide for payment of support into the clerk's office, as the first order entered did. (R. 12, 24). *Pickett* does not specify to whom the support payments were to be made. In *Bendix,* they were to be paid into the Clerk's office. Thus, both cases are distinguishable on their facts. However, we find *Bendix* instructive.

In *Bendix* the court said

> A second exception to the rule regarding denial of credit for nonconforming payments was articulated in *Payson v. Payson* (1982) Ind.App., 442 N.E.2d 1123. Credit for nonconforming payments may be allowed when the parties have agreed to the alternate method of payment. *Id.,* at 1129.

*Bendix,* 550 N.E.2d at 826. The lower court determined as a factual matter the parties agreed James should pay his support payments directly to Christine for the period in question. Thus, its determination James was to receive credit for them was proper.

Affirmed.

RUCKER, J., concurs.

CHEZEM, J., concurs in result with separate opinion.

CHEZEM, Judge, concurring in result.

I agree with the majority that the trial court's 1986 modification warranted pro-

spective application. I also agree that James is entitled to credit for his payments to his daughter, but only because the December 27, 1983 decree did not specify to whom the support would be paid. Paying support to a child is not necessarily supporting the child as many children would not apply the support to food and shelter. *See Whitman v. Whitman* (1980), Ind. App., 405 N.E.2d 608. I believe a better policy would be for the trial court to designate the recipient in its decree, which would prevent any uncertainty when determining the trial court's original intent.