Pete HAZIFOTIS, Appellant (Defendant Below),

v.

CITIZENS FEDERAL SAVINGS AND LOAN ASSOCIATION, Appellee (Plaintiff Below).

No. 4–1185A330.

Court of Appeals of Indiana, Fourth District.

Oct. 8, 1986.

Ordered Published March 23, 1987.

Robert E. Stochel, John M. O'Drobinak, P.C., Crown Point, for appellant.

Paul A. Rake, Eichhorn, Eichhorn & Link, Hammond, for appellee.

YOUNG, Judge.

Pete Hazifotis appeals a judgment of foreclosure in favor of Citizens Federal Savings and Loan Association. He argues that:

1) Citizens failed to notify him of its intent to accelerate the maturity of the mortgage debt;

2) The transfer of the business property by Hazifotis to World Wide, Inc. terminated Hazifotis' obligation under the mortgage; and

3) The bank's acceptance of payments from World Wide, Inc. and Thureanos indicated that the bank had acquiesced in the assumption of the mortgage and therefore Hazifotis was no longer personally liable for the debt.

We affirm.

Hazifotis borrowed $48,000 from Gary Federal securing the loan by a real estate mortgage on property he was purchasing. The loan, which was closed on July 31, 1979, was to be utilized to purchase property for a snow blower and lawn mower business. Hazifotis agreed to pay the indebtedness and interest on the note, together with all taxes, assessments and insurance associated with maintenance of the property. Among other things, failure to perform as promised allowed Gary Federal to declare the note in default, accelerate the note, collect the balance and foreclose on the real estate. The mortgage was recorded August 6, 1979, and Hazifotis received the mortgage proceeds with which he purchased the property.

After the property was purchased, the snow blower and lawn mower business was established as World Wide, Inc., whose operations were supervised by a Mr. Thureanos. In January 1981, Hazifotis sought to divest himself of any interest in World Wide, Inc. by having Thureanos take it over. In June 1981, Hazifotis conveyed the mortgaged property to World Wide, Inc. for $10.00 by Warranty Deed with the restrictive language "subject to: ... First Mortgage of Pete Hazifotis to Gary Federal...." (R. 476) Simultaneously, he sold his share of World Wide, Inc. to Thureanos for $1,000.00.

As part of the transaction, Hazifotis intended that Thureanos would assume his outstanding mortgage explaining his desire to Dominic Cefali, president of Gary Federal. However, there were no further discussions because interest rates were too high. No paperwork was prepared to effect an assumption nor was Gary Federal's permission sought. When Hazifotis completed the sale he knew that there had been no transfer of his obligation. Thureanos never assumed the mortgage. Only the Gary Federal Board could approve an assumption and as a matter of policy, such an assumption would never release the original obligor.

In May 1981, when Hazifotis failed to make his monthly payment as required by his note to Gary Federal, Gary Federal sent Hazifotis a delinquency notice, but his account remained delinquent. On December 30, 1982, the loan was treated as being in default for non-payment and failure to maintain insurance. Citizens Federal subsequently acquired Gary Federal in September 1983 and Jody Edinger of the successor business wrote a certified letter to Hazifotis explaining that if there were no "resolution of the problems of a delinquency, then, we would have to initiate a foreclosure." (R. 414) Thereafter, Hazifotis was sent past due notices on a monthly basis to his Harrison Street address. Hazifotis showed the letter to Thureanos, who made some of the payments on the loan, but the loan was never brought current. Foreclosure proceedings were begun July 17, 1984 with the resulting judgment against Hazifotis.

■ Hazifotis first argues that Citizens failed to clearly and unequivocably notify him of its intent to accelerate the maturity of the mortgage debt. *Citing First Federal Sav. & Loan Ass'n v. Stone* (1984), Ind.App., 467 N.E.2d 1226. His reliance upon that case is misplaced. In *Stone*, the debtor, pursuant to the bank's request, made tender offers for the amount due. These offers were rejected by the bank. The offers were held to have prevented the acceleration of the debt and foreclosure by the bank because the bank's intent to accelerate was not clear and unequivocal since the bank had solicited Stone's offer of payment. Contrary to Hazifotis' contentions, the *Stone* decision merely states that a mortgagee may not declare the entire amount of a debt due after the debtor has tendered an offer to pay the full amount due. *Stone, supra* at 1233. In *Stone*, such an offer was solicited by the bank and made by the debtor. In the present case, Hazifotis tendered no offer to pay the full amount of the arrearage. Rather, Thureanos made some of the past due payments, but the loan was never brought current. Thus the *Stone* case is inapposite.

In addition, Hazifotis agreed to pay the purchase money loan according to certain terms and upon default repay the accelerated remaining balance without "notice of non-payment and protest...." Further, he agreed that the "[m]ortgagee is hereby authorized and empowered, at its option and without affecting the lien ... to declare without notice, all sums secured ... immediately due and payable ..." and he agreed that "the mortgagee may deal with such successor or successors in interest ... and ... may extend time for payment ... without in any way affecting the liability of the mortgagor." Promises of this variety in the mortgage agreement operate to discharge any need for the type of notice of acceleration claimed here, because the lender is by operation of the agreement requiring strict compliance even if payments are accepted late and can give notice by his foreclosure action. *Skendzel v. Marshall* (1973), 261 Ind. 226, 301 N.E.2d 641, 643. Thus by agreement, notice prior to commencement of the legal action is not required.

> [S]ince a security agreement is to be enforced according to its terms, an agreement containing a non-waiver and non-modification clause gives the secured party the right to take possession of the collateral without notice upon default.

*Van Bibber v. Norris* (1981), 275 Ind. 555, 419 N.E.2d 115, 122. This principle is operative in a mortgage context in "preventing acceptance of late payments from operating as a waiver of a subsequent default." *First Federal Sav. & Loan Ass'n v. Stone,*

*supra* at 1232. Thus, the argument that Gary Federal forfeited its right to accelerate the mortgage by accepting some late payments is without merit. Similarly, the argument that Hazifotis was no longer obligated under the mortgage because of the transfer of the land to World Wide, Inc. must fail.

■ The conveyance by a mortgagor of the mortgaged premises to another does not exonerate him from personal liability for the debt secured. *Stamper v. Link* (1946), 117 Ind.App. 212, 69 N.E.2d 600.

> In our view, it is the law of Indiana that a conveyance of real estate subject to an encumbrance such as a mortgage, which is the personal obligation of the grantor, without any assumption by the grantee to discharge the encumbrance, does not operate to relieve the grantor of his obligation to the mortgagee or to transfer such obligation to the grantee.

*Walther v. C.I.R.* (7th Cir.1963), 316 F.2d 708, 710. Thus Hazifotis remained obligated under the mortgage.

■ Hazifotis next argues that he was not personally liable for the mortgage note because Citizens by accepting payments from World Wide, Inc. and Thureanos somehow acquiesced to its assumption— not so. Citizens' acceptance of payments from World Wide, Inc. did not release Hazifotis from his liability. There was no assumption of the original mortgage by World Wide, Inc. and there was no modification of the original mortgage terms or alteration of the personal liability originally imposed. In fact, no written documents were prepared that would provide for an assumption by World Wide, Inc. Thureanos understood there to be no assumption and he understood that in the absence of an appropriate written agreement there was no assumption. Likewise, Hazifotis admitted in his discussion with Thureanos that he was still liable on the mortgage and that he had not been able to complete the transfer of his obligation to World Wide, Inc. Moreover, Gary Federal had a standing policy that it would not allow the release of the primary obligor and it evidenced nothing to indicate that it had. It never

changed the rate of interest, waived the lateness of a payment, or withheld its efforts to bring the loan current. Rather, all of the evidence indicates that the parties recognized that any assumption would require refinancing at a different interest rate and the payment of additional points. This was specifically considered and rejected by Thureanos, and Hazifotis understood that without a new agreement based upon "a change in the interest rates and new points" all he could rely upon was Gary Federal's awareness of the sale. This is insufficient. That Gary Federal may have been aware of the transaction does not release Hazifotis. *Gregory v. Arms* (1911), 48 Ind.App. 562, 96 N.E. 196. Indeed the trial court found *inter alia:*

25. That Cefali discouraged HAZIFOTIS and Thureanos from pursuing and completing said assumption immediately, in the expectation that interest rates would drop in the near future.

26. That all three men knew, understood and expected that formal paperwork and a renegotiation of the terms of said mortgage were required to complete a valid assumption of the mortgage and to discharge HAZIFOTIS' liability on said debt.

27. That said formal paperwork was never completed.

28. That all said parties were aware that said paperwork was not done.

29. That PETE HAZIFOTIS has been a licensed real estate broker since 1965, active in the real estate business since 1963, and is aware of the documents required to effect a valid mortgage assumption.

30. That George Thureanos has been a licensed real estate salesman since approximately 1956, and manages several businesses.

31. That neither Thureanos nor World Wide, Inc. assumed said mortgage and note, and Defendant PETE HAZIFOTIS remains personally liable on said debt.

Moreover, even if there were a proper assumption, this standing alone, does not release the obligation of the original mortgagor unless there was also some change in his rights relative to repayment of the debt. While it is true that when a mortgage is assumed a relationship between grantor and grantee may become as that of principal and surety, the relationship of the original borrower does not change as to the lender in the absence of an express agreement on the part of the mortgagee to look first to the grantee. *Geisen v. Karol* (1928), 86 Ind.App. 653, 159 N.E. 469.

> If the purchaser assumes the mortgage, he becomes as to the mortgagor the principal debtor, and the mortgagor the surety, but the mortgagee, unless he has assented to such an arrangement may treat both as principal debtors, and may take a personal judgment against each of them in addition to his decree of foreclosure.

*Id. Gregory,* supra at 567–568, 96 N.E.2d at 199. Accordingly, Hazifotis' claims that he is released because Gary Federal accepted payments from World Wide, Inc. or because Thureanos responded to Jody Edinger's letter are incorrect. Absent dealings between World Wide, Inc. and Gary Federal or Citizen's Federal which would operate "in such a manner as would jeopardize or alter the surety-principal relationship," there is no legal basis for allowing the release of Hazifotis on his obligation. *First Federal Savings & Loan Ass'n of Gary v. Arena* (1980), Ind.App., 406 N.E.2d 1279, 1285. Hazifotis is personally liable according to the terms of his original promise.

Affirmed.

CONOVER, P.J., and MILLER, J., concur.