Wilmer OTTO, Doris Otto, Community Square, An Illinois General Partnership, Wilmer Otto, Omer Schrock, Partners, Appellants, (Defendants and Third Party Plaintiffs Below),

v.

PARK GARDEN ASSOCIATES, A California Limited Partnership, (Plaintiff Below),

United Presidential Life Insurance Company, Chester M. Miller, Kesco Investment Company, Delaware Telephone Answering, Myrtle B. Barnsley, First National Bank of Louisville, (Defendants Below),

O–S Village of Twin Oaks, An Illinois Partnership, (Intervenor & Third Party Plaintiff Below),

and

James D. Davis & Sons, A California Partnership, (Third Party Defendant Below), Appellees.

No. 48A04–9112–CV–434.

Court of Appeals of Indiana, Fourth District.

April 5, 1993.

Rehearing Denied June 24, 1993.

James E. Freeman, Jr., Jonathan R. Builta, Sansberry Dickmann Freeman & Builta, Anderson, for appellants.

David W. Stone IV, Stone Law Office & Legal Research, Don W. Peck, Peck & Peck, Anderson, for appellees.

MILLER, Judge.

This case involves a foreclosure action brought by Park Gardens Associates against the Ottos and Community Square (collectively "the Ottos"), and a determination of the scope of the Ottos' liability under their personal guaranty securing a portion of the mortgage. On May 1, 1991, the trial court granted partial summary judgment[1] in favor of Park Gardens on their action for foreclosure. The trial court also determined that the Ottos' guaranty provided for the imposition of liability for attorneys' fees and interest in addition to the guaranty's maximum value. After the trial court converted its partial summary judgment into a final appealable order, the Ottos filed a motion to set aside the judgment under Ind.Trial Rule 60(B)(3) claiming fraud. The trial court denied this motion.

The Ottos challenge the trial court's determinations and we affirm. In addition, we remand to the trial court for a determination of Park Gardens' reasonable appellate attorneys' fees.

## FACTS AND PROCEDURAL HISTORY

The undisputed facts reveal that on June 27, 1986, the Ottos entered into a purchase agreement with Park Gardens concerning a multi-family housing project in Indianapolis known as Village of Twin Oaks Apartments. As part of the purchase price, the Ottos executed a non-recourse mortgage note (the "note") for the amount of $550,-000. The note gave Park Gardens a $200,-000 security interest in Twin Oaks. As additional security for the note, the Ottos also signed a guaranty which provided that they would be personally liable on the non-recourse note, jointly and severally, up to a maximum amount of $250,000. Over a year later, on September 9, 1987, Community Square (an Illinois general partnership in which Mr. Otto and Omer Schrock were the general partners) executed a real estate mortgage and security agreement substituting a $200,000 security interest in Community Square Apartments of Anderson for the security interest in Twin Oaks.[2]

Under the terms of the note, payments were to be made at the beginning of each month. Beginning in June, 1988, however, the Ottos were consistently late in their payments, sometimes up to thirty days. On October 11, 1988 and November 22, 1988, Park Gardens sent letter to the Ottos informing them that payments were due on the first of the month, and requested the Ottos to bring the balance current. The Ottos did not. On December 29, 1988, Park Gardens sent a letter to the Ottos declaring the note in default and notifying Ottos that it was accelerating the balance of the note. On June 15, 1989, Park Gardens sent to Ottos yet another notice of default and acceleration.

On July 24, 1989, Park Gardens filed an action for foreclosure upon the guaranty and security interest; later, on March 26, 1990, Park Gardens filed a motion for summary judgment. After numerous continuances, Ottos and Community Square, on February 13, 1991, filed their reply to Park Gardens' motion. The trial court held a

---

1. The remaining issue before the trial court was a foreclosure action brought by a superior lienholder, *see, infra* note 2, who held a lien on the same property securing Park Gardens' note and mortgage. This issue was decided by the trial court on September 13, 1991.

2. Park Garden's security interest in Community Square Apartments was junior to a prior lien held by United Presidential Life Insurance Company in the amount of $1,065,000.

hearing on the motion, and, on May 1, 1991, granted partial summary judgment in favor of Park Gardens. On May 31, 1991, the trial court, in compliance with T.R. 56(C), made its partial judgment into a final appealable order.

Nearly a month later, on June 25, 1991, Ottos and Community Square filed motions under T.R. 59 and 60(B)(3), asking the trial court to set aside its summary judgment order. In support of these motions, the Ottos presented affidavits purportedly demonstrating that numerous materials submitted by Park Gardens in support of its summary judgment motion were perjured and fraudulent. On September 4, 1991, the trial court denied both motions.

## DECISION

### I. FORECLOSURE WAS APPROPRIATE.

 The Ottos claim the trial court erroneously granted summary judgment because: (1) a factual dispute existed as to whether the note was in default; (2) they were entitled to notice before acceleration of the note; and (3) Park Gardens breached various warranty provisions in the purchase agreement which by law precluded their action for foreclosure. When reviewing a grant of summary judgment, we apply the same standard applicable in the court below. *Jackson v. Blanchard* (1992), Ind.App., 601 N.E.2d 411, 414. The facts and inferences that follow must be liberally construed in favor of the non-movant. *Inland Steel v. Pequignot* (1993), Ind.App., 608 N.E.2d 1378. However, once the movant has carried his initial burden of going forward under T.R. 56(C), the non-movant must do more than simply sit on his pleadings; he must come forward with sufficient evidence demonstrating the existence of genuine factual issues which should be resolved at trial. T.R. 56(E). If the non-movant fails to meet this burden, then—assuming the law is with the movant—summary judgment should be granted.

 In determining whether or not the Ottos were in default, and if Park Gardens was required to give notice before acceler-

ating the note, we must first examine the pertinent agreements executed by the parties. *Cf., Hazifotis v. Citizens Fed. Sav. & Loan Ass'n* (1986), Ind.App., 505 N.E.2d 445, 447 ("security agreement[s] [are] to be enforced according to their terms").

The promissory note of June 27, 1986 between Ottos and Park Gardens states:

> *If default is made in the payment of any installment or installments of interest, principal, or principal and interest, as herein provided, within ten (10) days of when due ... then,* in any such events, or at any time, thereafter, *the entire principal of this Note ...* together with attorneys' fees incurred in collection or enforcing payment or performance thereof, with interest from the date of such default on the unpaid principal balance hereof ... *shall at the election of the holder, and without relief from valuation or appraisement laws, become immediately due and payable.*

> \* \* \* \* \* \*

> The undersigned and all endorsers, guarantors, sureties, accommodation parties hereof and all other persons liable or to become liable for all or any part of this indebtedness, *severally waive demand, presentment for payment, notice of dishonor, protest and notice of protest,* and expressly agree that the Note and any payment coming due under it may be extended or otherwise modified, from time to time without in any way affecting their liability hereunder.

R. 125–27 (emphasis added). The real estate mortgage and security agreement entered into between Park Gardens and Community Square on September 9, 1987 provides, in Art. III "REMEDIES UPON DEFAULT":

> 3.01 *Events of Default.* Any of the following events shall be deemed an event of default hereunder:

> a. Default shall be made in the payment of any installment of principal or interest or any other sum secured hereby when due;

> \* \* \* \* \* \*

3.02 *Acceleration Upon Default.* Notwithstanding anything to the contrary herein set forth, no default shall be deemed to have occurred hereunder, *except with respect to the payments of principal and interest within ten (10) days after the same is due,* unless (i) such default has not been cured within thirty (30) days after written notice thereof to Mortgagor or (ii) within such thirty (30) day period, Mortgagor has failed to commence such action as may be reasonably necessary to cure such default. *In the event of any event of default Mortgagee may declare all indebtedness secured hereby to be due and payable and the same shall thereupon become due and payable without any presentment, demand, protest or notice of any kind.*

R. 151–52 (emphasis added). We see no language in these documents indicating an obligation upon Park Gardens to notify the Ottos of its intent to accelerate the note. According to the clear language of these documents, the Ottos promised to pay the remaining principal balance in event of default without demand or notice of acceleration. By making these promises, the only notice the Ottos were entitled to—should they default—was Park Gardens' foreclosure action itself. *See, Hazifotis, supra.*

▪ In its summary judgment motion, Park Gardens relied upon the above documents, and a list of the Ottos' consistently late payments. Based on this, Park Gardens met its burden in showing that the Ottos were in default, that no notice was required before accelerating the note, and that Park Gardens was by law entitled to foreclosure. At this point, it was up to Ottos to set forth specific *facts* demonstrating the existence of genuinely disputed issues which would preclude summary judgment. The Ottos did nothing of the sort. Instead, the Ottos merely asserted in their reply (without providing any evidence) that at the time they received Park Gardens' acceleration notice, the Ottos were not in default. They did not include cancelled checks or any other evidence which would have allowed the trial court to find that the issue of default should be decided at trial. It was up to the trial court to determine, based on the undisputed facts before it, the ultimate fact of default based on evidence presented by the parties. Therefore, Ottos' conclusory statements did not constitute the type of factual showing necessary under T.R. 56(E) to avoid summary judgment.[3] *See, Dedelow v. Rudd Equipment Corp.* (1984), Ind.App., 469 N.E.2d 1206, 1209.

▪ Next, the Ottos raise for the first time in their appellate brief that Park Gardens' breach of various warranty provisions in the promissory note should have prevented summary judgment. However, it is beyond peradventure that when challenging an adverse grant of summary judgment, a party cannot rely upon a theory that was not properly before the trial court. *Franklin Bank and Trust Co. v. Mithoefer* (1990), Ind., 563 N.E.2d 551, 553; *accord, Hardiman v. Governmental Interinsurance Exchange* (1992), Ind.App., 588 N.E.2d 1331, 1333, *trans. denied; Fortmeyer v. Summit Bank* (1991), Ind. App., 565 N.E.2d 1118, 1120. Having failed to present their warranty argument to the trial court in response to Park Gardens' motion for summary judgment, the Ottos are precluded from asserting it to this court as a grounds for reversal.

▪ Finally, the Ottos, relying upon *Simpson v. Aetna Finance Co.* (1988), Ind. App., 523 N.E.2d 762, maintain that because Park Gardens made numerous misrepresentations concerning the condition of Twin Oaks in luring Ottos into the transaction, this constituted a complete defense to

---

**3.** The Ottos, relying upon *First Federal Sav. & Loan Ass'n of Gary v. Stone* (1984), Ind.App., 467 N.E.2d 1226, *trans. denied,* also argue that even if they were in default, the fact that they tendered the entire arrearage to Park Gardens before it accelerated the note should have *by law* prevented summary judgment. But this merely begs the question. Whether or not the Ottos tendered any back payments was a factual question and, as we discussed above, they failed to include any *facts* in their response to Park Gardens' summary judgment which would have allowed the trial court to find that such a tender had occurred.

Park Gardens' foreclosure action. Their reliance is misplaced. In *Simpson*, the appellants claimed that they were unaware of the existence of the mortgage until the mortgagee brought its action for foreclosure. Responding to the foreclosure proceedings, the appellants sought to rescind the mortgage, alleging that it had been fraudulently formed. Here, the Ottos are not alleging that they were fraudulently induced into signing a mortgage; instead, they are claiming that they were fraudulently induced into the purchase agreement. However, the Ottos have presented no cogent argument connecting such fraud to their default on the note. Perhaps if they were seeking to rescind the purchase agreement, these allegations would have some relevance. However, the issue before the trial court was not rescission, but whether or not the Ottos were in default. Therefore, we find this argument was nonresponsive to Park Gardens' foreclosure action, and conclude that the trial court properly granted summary judgment.

## II. THE TRIAL COURT'S AS-SESSMENT OF LIABILI-TY WAS PROPER.

The Ottos raise two objections to the trial court's assessment of liability pursuant to its foreclosure judgment. First, they claim the trial court erred by holding that the Ottos, Community Square, and Wilmer Otto and Omer Schrock were jointly and severally liable in the amount of $534,836.25 when none of them had any personal liability under the promissory note. Second, the Ottos claim that because the personal guarantee they signed was limited to a maximum amount of $250,-000.00, the trial court erred in imposing additional liability for attorney fees and interest, bringing their total personal liability to $297,508.30.

Addressing the Ottos' first contention, we turn to the disputed portion of the trial court's judgment decree which states:

IT IS, THEREFORE, ORDERED, AD-JUDGED AND DECREED by the Court that:

1. The plaintiff is hereby granted judgment against the defendants, Wilmer Otto, Doris Otto, Community Square, an Illinois general partnership, Wilmer Otto and Omer Schrock, partners, in the amount of $534,836.25, including interest and attorney fees, *jointly and severally*, without relief from valuation or appraisement laws, together with the costs of this action and of the sale.

R. 1441 (emphasis added).

When assessing a challenge to the language of a judgment, we, as the reviewing court, will read the judgment's provisions together in order to render the judgment effective. *Brown v. Brown* (1991), Ind.App., 581 N.E.2d 1260, 1263. To help us in this task, we may look at the entire record, including, but not limited to, the complaint, findings, and evidence to ascertain the judgment's meaning and effect. *Id.* Given the presumption that a trial court intended its judgment to be valid and not void, *see*, 46 Am.Jur.2d *Judgments*, § 76 (1969), we will liberally construe the trial court's judgment to make it serviceable, not useless. *Brown, supra.*

We agree that the trial court incorrectly used the phrase "jointly and severally" in describing the parties' liabilities. The term "joint and several" means that all parties are bound individually (severally) and as a unit (jointly). *See, Campion v. Wynn* (1985), Ind.App., 486 N.E.2d 543, 545–46. However, as the Ottos correctly point out, the note they signed on June 26, 1986 did not provide for personal liability in the event of default. Instead, the note was secured by a security interest in Twin Oaks Apartments. The only personal liability accruing to the Ottos was evidenced by the June 27, 1986 personal guaranty in the amount of $250,000. Likewise, Community Square, not being a party to the Note, could have no liability under the Note. Thus, if we were to focus solely upon this phrase (as the Ottos apparently think we should), then we would agree that the trial court had committed an error in its decree.

Looking at the judgment decree as a whole, however, we find that the trial

court, in what it purported to be findings—but what were merely a recitation of the undisputed facts pertaining to liability—properly understood and delineated the parties' respective liabilities. The trial court found that Wilmer Otto and Omer Schrock, as general partners for Community Square, were liable under the September 9, 1987 security agreement in the amount of $237,327.95. R. 1439. This included the security interest in Community Square Apartments for $200,000.00, $24,200.00 in interest, and $13,127.95 in attorneys' fees. *Id.* The trial court next found that the Ottos' were liable under their guaranty for $297,508.30. R. 1439–40. This included the guaranty's face amount of $250,000.00, $30,800.00 in interest, and $16,708.30 in attorneys' fees. R. 1440. These amounts total the trial court's final amount of $534,836.25. Thus, in reviewing the trial court's reasoning, we find that it was specific in informing the parties of their respective liabilities and from what sources these obligations would be satisfied. Therefore, the trial court's use of the term "joint and several" in its order was explained. However, given the fact that we are remanding to the trial court for a determination of Park Gardens' appellate fees, *see, infra,* we direct the trial court to clarify its judgment in this regard.

We also reject the Ottos second contention that the trial court erred in imposing liability beyond the guaranty's $250,000 face value. The relevant portion of the guaranty states:

> *1. The Guaranty.... [T]he Guarantors hereby unconditionally guarantee the full and prompt payment when due, whether by acceleration or otherwise, of up to a maximum aggregate sum not exceeding Two Hundred Fifty Thousand Dollars ($250,000) of the indebtedness of the Debtor to the Partnership in the original principal amount of Five Hundred Fifty Thousand ($550,000) which is evidenced by a certain mortgage Note (the "note") in such amount of even date herewith given by the Debtor to the Partnership and the obligations to be performed by the Debtor under the terms of a certain Real Estate Mortgage and Security Agreement (the "Mortgage") of even date herewith, executed by the Debtor securing the indebtedness evidenced by the Note, which Mortgage covers certain real estate and personal property located in Marion County, Indiana, more particularly described in the Mortgage, and the further obligations set forth to be performed by the Debtor in the other documents executed by the Debtor in connection with such transaction, including ... interest, costs of collection, attorneys' fees or other obligations due in connection with or on account thereof (hereinafter referred to as the "Liabilities").*

> *2. Liabilities Guaranteed.* In the event the Debtor fails at any time to pay any part or all of the Liabilities guaranteed when due, whether by acceleration or otherwise, the Guarantors, upon written demand of the Partnership, will pay, within ten (10) days of the date of such demand, the Liabilities guaranteed in the same manner as if they constituted the direct and primary obligation of the Guarantors, and such obligation of the guarantors shall be due with costs of collection, attorneys' fees and without relief from valuation or appraisement laws.

R. 128–29 (emphasis added).

A guaranty is a contract in which one party agrees to assume liability for the performance of a duty or payment in the event the primary obligor defaults in performance or payment. *McEntire v. Indiana Nat. Bank* (1984), Ind.App., 471 N.E.2d 1216, *trans. denied.* When determining the scope of the guarantor's liability, we look to the terms of the guarantee itself. *Kordick v. Merchants Nat. Bank & Trust Co.* (1986), Ind.App., 496 N.E.2d 119, 123; *accord, Loudermilk v. Casey* (1982), Ind.App., 441 N.E.2d 1379, 1383. We interpret guarantees using the same rules of construction applicable to other contracts. *Kordick, supra; Loudermilk, supra.* We will not interpret the guaranty so narrowly as to frustrate the intent of the parties, nor so loosely as to relieve the guarantor of a

liability fairly within its terms. *Kordick, supra.*

After examining the guaranty's terms, we are of the opinion that it did not intend to limit the Ottos' total personal liability to $250,000. The limiting phrase—"of up to a maximum sum not exceeding Two Hundred Fifty Thousand Dollars"—is inextricably tied, through the use of a prepositional phrase, to language describing the $550,-000 principal due under the June 26, 1986 Note. Hence, this limiting phrase cannot carry through to the end of the paragraph. Moreover, this section is clearly in the conjunctive with subsequent language describing the Guarantors' liabilities for interest and attorneys' fees. Thus, the limiting terms in the guaranty only capped the Ottos' liability on the *Note's principal* to $250,000; any amounts for the costs of collection, interest, and attorneys' fees, were intended to be *in addition to* this dollar figure.[4] Therefore, the trial court properly assessed the Ottos for an additional amount of $47,508.30 for attorneys' fees and interest.

### III. RELIEF FROM JUDGMENT: T.R. 60(B)(3).

Finally, the Ottos challenge the trial court's denial of their T.R. 60(B)(3) motion. In their motion, the Ottos alleged that because Park Gardens submitted fraudulent and perjured materials in support of its motion for summary judgment, the trial court's judgment should have been vacated. T.R. 60(B)(3) does allow a party to allege fraud in attacking an adverse judgment. *Matter of Paternity of R.C.* (1992), Ind.App., 587 N.E.2d 153, 156; *accord, In Re Paternity of Tompkins* (1987), Ind.App., 518 N.E.2d 500, 504. A party making such a claim must demonstrate that: (1) the opposing party knew or should

have known from information available to him that his statements were false; and (2) the misrepresentation was made as to a material fact *which would change the trial court's judgment. Freels v. Winston* (1991), Ind.App., 579 N.E.2d 132, 135 (citing *McFarland v. Phend & Brown, Inc.,* (1974), 161 Ind.App. 695, 317 N.E.2d 460, 462, *trans. denied*) (emphasis added). The grant or denial of a motion for relief from judgment is within the sound discretion of the trial court and we will reverse only for abuse of that discretion. *Shotwell v. Cliff Hagan Ribeye Franchise, Inc.* (1991), Ind., 572 N.E.2d 487; *accord, Matter of R.R.* (1992), Ind.App., 587 N.E.2d 1341; *Taco Bell Corp. v. United Farm Bureau Mut. Ins. Co.,* (1991), Ind.App., 567 N.E.2d 163, *trans. denied.*

The Ottos have failed to demonstrate any connection between Park Gardens' supposedly falsified materials and the trial court's grant of summary judgment. The issues before the trial court on summary judgment were: (1) whether or not Ottos were in default; and (2) whether Park Gardens was required to give notice before it accelerated the note. As we discussed in *PART I, supra,* any assertion that Park Gardens misrepresented the condition of Twin Oaks was immaterial to the trial court's foreclosure determination. It stands to reason, therefore, that even if Park Gardens *had* submitted falsified materials in opposition to Ottos' allegations of such misrepresentations, then they too would have been irrelevant. Thus, the Ottos' T.R. 60(B)(3) argument merely attempts to bring in through the back door what we already refused to allow through the front door.

We affirm the trial court's judgment in whole. Pursuant to Ind.Appellate

---

4. Thus, this guaranty differs from the one before the court in *Goeke v. Merchants Nat. Bank & Trust Co.* (1984), Ind.App., 467 N.E.2d 760, *trans. denied.* There, the guaranty provided that the guarantor would be personally liable for payments under the note when due, together with costs of collection, attorneys' fees, and interest; following this language, the note contained a limiting provision at the bottom of the page which stated: "Notwithstanding the forego-ing, the individual liability ... for indebtedness and obligations of borrower to Merchants shall in no event exceed the sum of $96,500.00." *Id.* at 769. Unlike the liability limitation in Ottos' guaranty, the limitation in *Goeke,* by its very language, was not tied to only the guarantor's liability for note payments; rather, by referring to guarantor's liabilities as a whole, it clearly intended to impose a limit on the *aggregate* liability.

Rule 15(H), we award costs to Park Gardens. Also, in this appeal, Park Gardens has requested appellate attorneys' fees because the provision for "reasonable attorneys' fees" appearing in a guaranty has been held to include appellate fees. *See, Parrish v. Terre Haute Sav. Bank* (1982), Ind.App., 438 N.E.2d 1, 3. Based on the foregoing authority, we remand to the trial court for the determination of those fees.

CHEZEM and STATON, JJ., concurring.