## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 30 2020, 11:34 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kristina L. Lynn
Lynn Law Office, P.C.
Wabash, Indiana

ATTORNEYS FOR APPELLEE

Mark A. Frantz
M. Josh Petruniw
Downs Tandy & Petruniw, P.C.
Wabash, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Melody Barrows,<br>*Appellant*,<br><br>v.<br><br>Crossroads Bank,<br>*Appellee*. | November 30, 2020<br><br>Court of Appeals Case No.<br>20A-MF-978<br><br>Appeal from the Miami Circuit Court<br><br>The Honorable Timothy P. Spahr, Judge<br><br>Trial Court Cause No.<br>52C01-1803-MF-51 |

**Brown, Judge.**

[1] Melody Barrows appeals the trial court's entry of a decree of foreclosure and judgment in favor of Crossroads Bank ("Crossroads"). We affirm.

*Facts and Procedural History*

[2] Barrows executed a promissory note dated May 30, 2012, evidencing a loan from Crossroads to her in the original principal amount of $23,250 (the "Note") and a mortgage (the "Mortgage") granting Crossroads a security interest in certain real property located at 213 S. Wabash St., Peru, Miami County, Indiana (the "Property") to secure repayment of the loan. Barrows used the Property as a rental property.

[3] Crossroads sent a letter dated November 7, 2017, to Barrows stating she was in default for failure to make payments, the amount of the default was $413.06, and, if the default was not cured within thirty days, the entire amount owed under the Note would be immediately due and payable. Crossroads sent a letter dated November 9, 2017, to Barrows stating it was accelerating payment on the Note, the Note was in default because she was in default of her payments, and the payoff amount as of that date was $22,880.12. According to Barrows, she never received the letters.[1] Barrows made a payment of $687.92 on December 26, 2017.

---

[1] The Note and Mortgage included an address for Barrows of 2063 N St Rd 9, Peru, Indiana. The November 7th and 9th letters were addressed to Barrows at 2063 N St Rd 9 and identified the address of the Property as "231" South Wabash Street. Barrows testified that her physical address was 2063 North State Road 19, there was no mail receptacle at her residence, and her mailing address was P.O. Box 271, Peru, Indiana. Kathy Roberts, a Vice President of Collections at Crossroads, indicated "the mailing address for this loan was the

[4]     On March 2, 2018, Crossroads filed a Complaint on Promissory Note and to Foreclose Mortgage.[2]  An entry in the chronological case summary ("CCS") on October 12, 2018, indicates that Crossroads filed a Second Motion for Summary Judgment.  Barrows filed a response, and the court held a hearing. On May 5, 2019, the court issued an Order Entering Partial Summary Judgment in Favor of the Plaintiff.  With respect to whether Barrows was in default, the court found that acceleration of the amount due was merited and foreclosure of the Mortgage should be ordered and granted partial summary judgment.  The court further found there was a genuine issue of material fact with respect to the amount owed by Barrows and set an evidentiary hearing. On December 9, 2019, the court held an evidentiary hearing at which the court admitted documentary evidence and heard testimony from Vice President Kathy Roberts, Crossroads's attorney, and Barrows.

[5]     On January 29, 2020, the court issued a decree of foreclosure.  The court noted that it had previously entered partial summary judgment in favor of Crossroads and that Barrows argued the entry should be set aside.  It also noted the provisions of the Note and Mortgage and the letter indicating Crossroads was

---

P.O. Box in Peru," Crossroads had been informed there was no receptacle to receive mail at Barrows's home address, and the letters were sent to 2063 North State Road 19.  Transcript Volume II at 75.

[2] The record does not include the complaint.  The chronological case summary ("CCS") states service was made on Barrows by the Miami County Sheriff and "to all other Defendants" by certified mail.  Appellant's Appendix Volume II at 2.  The CCS also indicates Crossroads filed a motion for default and summary judgment in July 2018, Barrows filed a response, and on August 24, 2018, the court issued an order denying Crossroads's motion for summary judgment as to Barrows and granting it as to defendants Kathy Bunker, Wayne Bunker, and the Miami County Health Department.

accelerating payment of the Note, that Crossroads had incurred charges in obtaining insurance coverage for the Property, and that Barrows did not make payment until on or about December 26, 2017. The court found:

> Even if Barrows did not ever receive the November 9, 2017 letter, that does not immunize her from the foreclosure of the mortgage and entry of judgment in favor of Crossroads. The facts of this case are sufficiently similar to the facts in *Otto v. Park Garden Assocs.*, 612 N.E.2d 135 (Ind. Ct. App. 1993), *reh'g denied*, [*trans. denied*,] a case in which a lender was granted a foreclosure of a mortgage that had been signed by the debtor[.] The designated evidence shows that Defendant Barrows waived presentment and demand for payment, Crossroads reserved the right to invoke the acceleration clause without notice to Barrows, Defendant Barrows was in default at the time that the acceleration took place (for not making monthly payments in a timely fashion and for failing to provide proof of maintenance of insurance protecting the subject real estate, to name just two of the reasons), and the parties' written agreements contained non-waiver language benefiting Crossroads.
>
> [] After having reviewed all of the designated evidence once again, the Court concludes that partial summary judgment was properly granted in favor of Crossroads; hence, the Court sustains its prior ruling in that regard.

Appellant's Appendix Volume II at 17. The court determined that Barrows owed Crossroads $28,778.86 and would receive a credit for any amounts she paid after December 5, 2019. Barrows filed a Motion to Correct Error and/or Motion for Relief From Judgment, which the court denied.

### *Discussion*

[6]     Barrows challenges the trial court's order of foreclosure and the amount of the judgment. To the extent she challenges the trial court's partial summary judgment ruling, summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Mangold ex rel. Mangold v. Ind. Dep't of Natural Res.*, 756 N.E.2d 970, 973 (Ind. 2001). We may affirm the trial court's ruling on any grounds supported by the Indiana Trial Rule 56 materials. *Catt v. Bd. of Comm'rs of Knox Cnty.*, 779 N.E.2d 1, 3 (Ind. 2002).

[7]     To the extent Barrows argues the judgment is clearly erroneous, in reviewing findings of fact and conclusions of law, we apply a two-tiered standard of review by first determining whether the evidence supports the findings and then whether the findings support the judgment. *Bayview Loan Servicing, LLC v. Golden Foods, Inc.*, 59 N.E.3d 1056, 1066 (Ind. Ct. App. 2016). Findings are clearly erroneous when the record contains no facts to support them either directly or by inference, and a judgment is clearly erroneous if it applies the wrong legal standard to properly found facts. *Id.* at 1066-1067. To determine a finding or conclusion is clearly erroneous, our review of the evidence must leave us with the firm conviction that a mistake has been made. *Id.* at 1067. Further, a party appealing from a negative judgment will prevail only if the party establishes the judgment is contrary to law. *See id.* A judgment is contrary to law when the evidence is without conflict and all reasonable

inferences to be drawn from the evidence lead only to one conclusion but the trial court reached a different conclusion. *Id*.

A. *Acceleration*

[8] Barrows first asserts that her payment of $687.92 on December 26, 2017, cured her default and that, based on Crossroads's acceptance of the payment and application of it to the balance due, there is doubt as to its intentions to accelerate the Note and the decree of foreclosure must be reversed.

[9] In *Otto v. Park Garden Assocs.*, the lender brought a foreclosure action against the borrowers, and the trial court granted partial summary judgment. 612 N.E.2d 135, 137 (Ind. Ct. App. 1993), *reh'g denied*, *trans. denied*. On appeal, the borrowers argued summary judgment was improper because they were entitled to notice before acceleration of the promissory note. *Id*. at 138. To determine whether the lender was required to give notice before accelerating the note, this Court reviewed the terms of the promissory note and mortgage. We observed the promissory note stated "[i]f default is made in the payment . . . then, in any such events, or at any time, thereafter, the entire principal of this Note . . . shall at the election of the holder, and without relief from valuation or appraisement laws, become immediately due and payable" and "[t]he undersigned . . . waive demand, presentment for payment, notice of dishonor, protest and notice of protest. . . ." *Id*. We noted the mortgage stated "[i]n the event of any event of default [the lender] may declare all indebtedness secured hereby to be due and

payable and the same shall thereupon become due and payable without any presentment, demand, protest or notice of any kind." *Id*. at 139. We then held:

> We see no language in these documents indicating an obligation upon [the lender] to notify the [borrowers] of its intent to accelerate the note. According to the clear language of these documents, the [borrowers] promised to pay the remaining principal balance in event of default without demand or notice of acceleration. By making these promises, the only notice the [borrowers] were entitled to—should they default—was [the lender's] foreclosure action itself.

*Id*. We affirmed the entry of partial summary judgment. *Id*.

[10] Here, the record reveals that Crossroads accelerated the total balance owed on the Note on or about November 9, 2017. Barrows does not dispute that, at that time, she was delinquent in her payments under the Note and thus in default. While the November 7, 2017 letter indicated Barrows could cure her default within thirty days, Barrows never received the letter and thus did not rely on it, and in any event she did not make a payment within the thirty-day period. Further, the record reveals, and Barrows does not challenge, that the Miami County Sheriff served her with Crossroads's Complaint on Promissory Note and to Foreclose Mortgage. Barrows does not point to a provision of the Note or Mortgage which required that Crossroads provide her with notice of, or an opportunity to cure, her default for failure to make timely payment prior to accelerating the total balance owed or the indebtedness. To the contrary, the Mortgage expressly provided that, upon "an Event of Default and at any time thereafter, [Crossroads], at [its] option, may exercise any one or more of the following rights and remedies . . . [:] Accelerate Indebtedness. [Crossroads]

shall have the right at its option *without notice to* [Barrows] to declare the entire Indebtedness immediately due and payable, including any prepayment penalty that [Barrows] would be required to pay." Appellant's Appendix Volume II at 31-32 (emphasis added). The Mortgage also states "[Barrows] understands [Crossroads] will not give up any of [its] rights under this Mortgage unless [it] does so in writing," "[t]he fact that [Crossroads] delays or omits to exercise any right will not mean that [it] has given up that right," and "[Barrows] waives presentment, demand for payment, protest, and notice of dishonor." *Id*. at 33-34. Further, the Note provided that, "[u]pon default, [Crossroads] may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then I will pay that amount," "the indebtedness will be repaid without relief from any Indiana or other valuation and appraisement laws," and "I . . . waive presentment, demand for payment, and notice of dishonor." *Id*. at 22-23. Barrows has not shown that Crossroads failed to comply with the terms of the loan documents. *See Otto*, 612 N.E.2d at 138-139.[3] Based on the record and Barrows's arguments, we conclude reversal on this basis is not warranted.

B.     *Amount Owed*

---

[3] Barrows cites *INB Banking Co. v. Opportunity Options, Inc.*, in which this Court stated a mortgagee's election to accelerate a note must be clear and unequivocal and found the letter at issue was not clear and unequivocal or provided the required notice. *See* 598 N.E.2d 580, 584 (Ind. Ct. App. 1992), *reh'g denied*, *trans. denied*. However, unlike the loan documents in this case and in *Otto*, the loan documents in *INB Banking Co.* were determined to require written notice of default and that the notice allow thirty days to cure. *See id*.

[11] Barrows further argues the payment history reflected a balance due of $13,267.35 on December 2, 2019, and "[t]here was simply no substantial evidence of probative value to support the judgment of $28,778.86 as of December 5, 2019." Appellant's Brief at 12. In her statement of facts, she states "[t]he loan history also included fees that had been incurred by Crossroads throughout the life of the loan, such as insurance, attorney's fees, title searches and real estate taxes" and "[t]hose charges already show up in the loan history." *Id*. at 8.

[12] The trial court's order set forth the following calculation to determine the total amount that Barrows owed Crossroads as of December 5, 2019:

| | |
|---|---|
| Principal (as of December 5, 2019) | $ 13,267.35 |
| Late Charges | $ 167.18 |
| Property Preservation (Insurance and Real Estate Taxes) | $ 1,975.49 |
| Title Searches | $ 408.00 |
| Attorney Fees for Cause No. 52D01-1407-MI-000246 | $ 5,085.33[4] |
| Attorney Fees for Cause No. 52C01-1803-MF-000051 | $ 7,875.51 |
| Total | $ 28,778.86 |

Appellant's Appendix Volume II at 19.

[13] The record reveals that Crossroads presented, as Plaintiff's Exhibit No. 3, an account snapshot or payment history with respect to Barrows's loan which reflected the initial entry of the loan proceeds in 2012 and reductions of the

---

[4] Roberts testified that Crossroads incurred attorney fees with respect to a complaint to foreclose a mechanics lien by a cleanup company which was ultimately dismissed.

principal loan balance due to payments received. The payment history showed a loan balance of $13,267.35 as of December 5, 2019. Crossroads further presented, as Plaintiff's Exhibit No. 4, a spreadsheet summarizing the insurance coverage, property tax, attorney fee, and lien search expenses it incurred with respect to the loan and the Property. The spreadsheet included a total for taxes paid of $698, insurance payments totaling $1,277.49, and a total for lien searches of $408. It also shows attorney fees incurred over the term of the loan, and Crossroads's attorney testified as to his customary rate and anticipated time for the hearing and his anticipated post-hearing services. Crossroads presented a schedule showing accrued but unpaid late fees totaling $167.18. Crossroads also presented receipts and letters to document the expenses. Barrows does not challenge the expense summaries, the reasonableness of the expenses, or the supportive documentation. To the extent Barrows states the expenses incurred by Crossroads "already show up in the loan history," Appellant's Brief at 8, we note Barrows does not develop an argument and does not point to the payment history to show that the expenses incurred by Crossroads increased the total principal loan balance or that the loan balance as of December 5, 2019 of $13,267.35 already accounted for these expenses. The court heard Roberts testify that the column labeled "Balance" on the payment history admitted as Plaintiff's Exhibit No. 3 showed only the principal loan balance. The trial court noted "[s]o, you've listed some figures on Plaintiff's Exhibit four . . . attorney fees, InsurMark, [] lien searches, real estate taxes" and asked "are all those amounts to be added to the principal amount on Exhibit three in order to determine what's owed," and Roberts responded "[t]hey do not go to principal.

We're not allowed to add anything to principal." Transcript Volume II at 83. The court asked if the full amounts listed on Plaintiff's Exhibit No. 4 were still owed, and Roberts answered affirmatively. Our review of the evidence does not leave us with the firm conviction that a mistake has been made, and we cannot say that all reasonable inferences to be drawn from the evidence lead only to one conclusion but the trial court reached a different conclusion.

[14] For the foregoing reasons, we affirm the trial court.

[15] Affirmed.

Robb, J., and Crone, J., concur.